PEOPLE *v.* HEARD

1. JURY—JURY QUESTIONNAIRES—AVAILABILITY—JURY COMMISSION OFFICE.

Former practice of the Detroit Recorder's Court of keeping jury questionnaires in the jury commission office rather than in the courtroom during *voir dire* did not prejudice the defendant where the questionnaires were available to defendant's counsel before *voir dire* and where the trial court gave defendant's counsel adequate time during the *voir dire* to inspect the questionnaires (GCR 1963, 510.3[2]).

2. JURY—QUESTIONING WITNESS—DISCRETION.

Allowing the jury to submit written questions to be asked of a witness has often been disapproved of and has usually been held to be within the discretion of the trial court.

REFERENCES FOR POINTS IN HEADNOTES

[1] 47 Am Jur 2d, Jury §§ 195, 196, 202, 211.
[2] 53 Am Jur, Trial § 852.
[3, 4] 53 Am Jur, Trial §§ 36, 904.
[5] 21 Am Jur 2d, Criminal Law §§ 368, 369.
  29 Am Jur 2d, Evidence § 375.
  40 Am Jur 2d, Homicide § 288.
[6, 7] 53 Am Jur, Trial § 684 *et seq.*

3. JURY—JUDGES—COMMUNICATION WITH JURY.

Trial judge's communicating with the jury after the jury had retired to consider its verdict and without the presence of the parties or their counsel is error.

4. JURY—JUDGE'S COMMUNICATION WITH JURY—ENTERING JURY ROOM.

Defendant's contention that the trial judge's taking exhibits into the jury room after the jury had retired to consider their verdict and without the parties or their counsel being present constituted a manifest injustice because the judge may have said something prejudicial to the jury *held,* without merit, where the defendant's counsel was aware of what had happened and did not raise an objection in the trial court and even though the judge's action was improper the record reveals no prejudice by the brief delivery of the exhibits to the jury.

5. EVIDENCE—FINGERPRINT CARDS—ADMISSIBILITY.

Admitting two fingerprint cards into evidence in defendant's trial for murder, even though the defendant did not take the stand, was not reversible error on the ground that the cards showed defendant's past police record where all information on the cards had been masked out except the defendant's signature and the words "prisoner's signature" and at no time was any comment made about the defendant's police record.

6. CRIMINAL LAW—PRESUMPTION OF INNOCENCE—INSTRUCTIONS TO JURY.

Failure to give an instruction to the jury on the presumption of innocence is not necessarily reversible error.

7. CRIMINAL LAW—PRESUMPTION OF INNOCENCE—INSTRUCTIONS TO JURY.

Failure to instruct the jury that the presumption of innocence "goes into the jury room" with them was not error where the trial court instructed that the defendant is presumed to be innocent until proven guilty beyond a reasonable doubt.

Appeal from Recorder's Court of Detroit, Joseph A. Gillis, J. Submitted Division 1 January 11, 1971, at Detroit. (Docket No. 8120.) Decided March 22, 1971. Leave to appeal granted August 31, 1971, 385 Mich 787.

Robert Heard, Jr., was convicted of first-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Angelo A. Pentolino,* Assistant Prosecuting Attorney, for the people.

*Charles Burke,* for defendant on appeal.

Before: V. J. BRENNAN, P. J., and FITZGERALD and LEVIN, JJ.

FITZGERALD, J.  Defendant was convicted of first-degree murder[1] and on appeal contends that his trial was only a notch better than the *Dreyfus* trial. Virtually nothing transpired which is not claimed to be error and the brief on appeal yields 15 issues (two of which are identical) and argues an estimated 11.

On oral argument (by counsel other than the trial counsel and preparer of the brief), an attempt was made to reduce the matters to specificity.  While many issues still remain somewhat arcane, we proceed to explore and resolve the most nearly meritorious.

The defendant first contends that under GCR 1963, 510.3(2), jury questionnaires must be kept in the courtroom during *voir dire*.  It appears that in recorder's court at the time of the trial, the questionnaires were kept in the jury commission office. Counsel contends that he has no way of knowing in advance from which group the jury will be selected.

---

[1] MCLA § 750.316 (Stat Ann 1954 Rev § 28.548).

Therefore, if he goes to the jury commission office before *voir dire,* he will have to check many more questionnaires than he would if they were kept in the courtroom.

Other than the court rule, counsel cites no authority. The rule provides:

"The attorneys shall be given a reasonable time to examine the questionnaires before being called upon to challenge for cause."

While it might be better practice or more convenient to have the questionnaires in the courtroom, counsel did have access to them. They were available in the jury commission office before *voir dire* began. Also, the trial court gave counsel time to go to the jury commission office during *voir dire.* Presently, the questionnaires are kept in the building, considerably more accessible. The process at time of trial did not deprive the defendant of a reasonable opportunity to examine the questionnaires during the *voir dire* and, while perhaps cumbersome, resulted in no prejudice.

The defendant further contends that it was error for the trial court to rule that the jury could not question the witness. In his opening statement, counsel for the defendant told the jury that they could submit written questions. The prosecution objected and the trial court ruled that the jury could not submit questions. The following colloquy took place:

"*Mr. Pillon [for defendant]:* The judge sits here as a referee and passes upon points of law, he makes sure we stay within our bounds, and he determines the issues, questions of law. But who decides the question of fact? You do. You decide if this occurred, what day it occurred, who did it,

and everything else; because you decide questions of fact. Since that is so, let me say this to you: We lawyers get busy in a trial lots of times. We don't try to deliberately avoid anything when we have witnesses on the stand. We want you to hear all of it. But sometimes in trial of a case the prosecution or defense forgets to ask a witness something or overlooks something.

"Now, you are the trier of the facts; if there's some question that is disturbing you about some witness, and you would like to ask that witness a question, raise your hand—just raise your hand, and we will have you write it out on a piece of paper. If the judge thinks it's a proper question, we will ask the question of the witness; because you are the trier of the facts, and you have the right to do that, as the judge when he's the trier of the facts.

"*Mr. Lacey* [*assistant prosecutor*] : I object, your Honor; this is argument. It hasn't been a proper opening statement. Now Mr. Pillon is attempting to control the exercise of this courtroom in a manner which I have never seen.

"*The Court:* I was going to ask Mr. Pillon his authority on that. I've never heard of that before.

"*Mr. Lacey:* I've never heard of that.

"*Mr. Pillon:* There's an English case on that.

"*The Court:* How old is it?

"*Mr. Pillon:* I don't know.

"*The Court:* Give me the citation. There's no case in the American jurisprudence to allow a juror to ask questions. I don't want a statement like that from any attorney.

"*Mr. Pillon:* I will put it right now on the record. I can see you and I are having a disagreement. When you are the trier of the fact, you ask questions of the witnesses. The jury has the same—

"*The Court:* This is a new theory of law in America.

*"Mr. Pillon:* I've done it before in Recorder's Court.

*"The Court:* Do you know any case anywhere in the United States—in the 50 states—or Federal jurisdiction that permits this?

*"Mr. Pillon:* I will try and bring you back a citation after the lunch hour."

There does not appear to be any Michigan authority on this question nor did the English case materialize after lunch. When the question has arisen, the practice has often been disapproved of and it is usually held to be within the discretion of the trial court. See Anno, 159 ALR 374.

The defendant also argues that it was error for the trial court to take the exhibits into the jury room. After ruling that the exhibits could go into the jury room, the trial court personally delivered them to the jury. Counsel for the defendant was aware of this:

*(Proceedings held outside the presence and hearing of the jury.)*

*"The Court:* Let the record reflect that all exhibits, with the exception of People's Exhibit No. 3, the wallet, and People's Exhibit No. 5, the Polish News, have been given to the jury, including Defense Exhibits A through D.

*"Mr. Pillon:* Let the record further show that the jury did not request these exhibits, that the judge decided to give these exhibits to the jury and took them into the jury room himself and tendered them to the jury.

"I think that is an improper procedure; I think that jurors have to ask for them."

Counsel now contends that the judge may have said something to the jury that was prejudicial. Since he was aware of what happened, he should have explored this question in the trial court. It

was, indeed, improper for the court in the absence of the parties and their counsel to communicate with the jury after it had retired to consider its verdict, but the record reveals no manifest injustice by the brief delivery of the exhibits to the jury.

The defendant contends that fingerprint cards that were introduced into evidence tended to show that he had a police record. Since he did not take the stand, he argues that he was prejudiced by the introduction of these cards. On both of these cards, all information was masked out except the words "prisoner's signature" and the signature. The first of these cards had been made in 1966; however, there was no testimony regarding the date it was taken. The officer who took these prints could not positively identify the defendant as the man whose prints were taken and the defendant opposed their admission because of this.

After this, the people produced the man who had taken the defendant's prints on January 14, 1969, and he positively identified the defendant. Both sets of prints were then compared to prints found at the scene of the crime. At no time was any comment made about the defendant's record and no reversible error occurred.

The defendant further submits that it was error to refuse to instruct the jury that the presumption of innocence "goes into the jury room" with them.

In considering the defendant's contention, it should first be pointed out that failure to give an instruction on the presumption of innocence has been held to be not necessarily reversible error. *People* v. *Graney* (1892), 91 Mich 646; *People* v. *Smith* (1892), 92 Mich 10; *People* v. *Ostrander* (1896), 110 Mich 60; *People* v. *Williams* (1919), 208 Mich 586. In *People* v. *Parsons* (1895), 105 Mich 177, 186, 187, the Court stated:

"The reason why the jury must solve all reasonable doubts in favor of the accused is that the presumption of innocence is with respondent. The burden is upon the people to overcome that presumption of innocence by proof that will convince the jury, beyond all reasonable doubt, of respondent's guilt. The case should not be reversed simply because the court has failed to give the reason why such burden is imposed upon the people. Where neither instruction has been given, it would be error; but where the jury have been instructed that they must be satisfied, beyond all reasonable doubt, that the respondent has committed the offense charged, it cannot be said that the respondent has been prejudiced by an omission to charge that the respondent is presumed to be innocent, especially where the court has already stated, in the presence of the jury, that in a criminal prosecution nothing can be presumed against the respondent."

The trial court instructed, *inter alia,* as follows:

"The defendant in this case is presumed to be innocent of the charge brought against him here; and that presumption of innocence abides with him throughout the entire trial of the case until he is proven beyond a reasonable doubt by the testimony given to be guilty of the charge brought against him."

It can only be concluded that a refusal to instruct specifically that the presumption of innocence "goes into the jury room" is not error. The instructions as a whole gave defendant all the presumptions and proper safeguards that the law requires.

Other issues raised have been considered and do not merit discussion, being either abandoned or incapable of unravelling.

As stated in *Mitcham* v. *City of Detroit* (1959), 355 Mich 182, 203:

"It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position."

The record has been thoroughly examined and closely scrutinized. No reversible error is apparent, real or imagined.

Affirmed.

All concurred.