## STATE v. HENRY LUCIUS MIMS.

235 N. W. 2d 381.

November 7, 1975—No. 44795.

*C. Paul Jones,* State Public Defender, and *William F. Forsyth,* Assistant State Public Defender, for appellant.

*Warren Spannaus,* Attorney General, *Gary W. Flakne,* County Attorney, and *Vernon E. Bergstrom, David W. Larson,* and *Michael McGlennen,* Assistant County Attorneys, for respondent.

Heard before Sheran, C. J., and Rogosheske and Todd, JJ., and considered and decided by the court en banc.

ROGOSHESKE, JUSTICE.

The sole issue presented on this appeal is whether in a criminal case any communication between the trial judge and the jury relating to the case occuring during the judge's uninvited entry into the jury room during the jury's deliberations and in the absence of defendant and counsel constitutes reversible error. We hold that it does and reverse defendant's conviction.

Defendant was charged and tried by jury for the crime of aggravated robbery under Minn. St. 609.245 for the theft, while armed with a revolver, of a television set and $24 belonging to one Hampton Jones. Upon submission of the case, as the record strikingly reveals, the jury was confronted with the difficult task of finding the true facts of the occurrence giving rise to the charge by resolving the direct conflicts between the testimony of Hampton Jones, who claimed he was the victim, and defendant, who denied such claims. The jury retired for deliberations at 12:04 p. m. At 1:50 p. m., the jury returned for additional instructions, which were properly given in the presence of defendant and counsel. At 2:09 p. m., the jury resumed its deliberations. At 4:15 p. m., the judge, without request or invitation of the jury and out of the presence of defendant and counsel, entered the jury room. The following exchange occurred between the judge and Mr. Bryan, the foreman of the jury:

"THE COURT: The record may show that I am now in the jury deliberation room with the two jury bailiffs, my Clerk of Court, Mr. William Macklin, and my court reporter, Dennis Quinn. The defendant is not present nor are the attorneys here.

"I am here simply for the purpose of inquiring what you feel the prospects are of your arriving at a verdict, Mr. Bryan, because in criminal cases a jury must be kept together until they arrive at a verdict and that means they can stay downtown over night, if that need be, unless the defendant and the State are both willing to agree that the jurors can go home at an earlier hour, and I wanted to get some impression from you as to what you thought when you might be able to arrive at a verdict so I could tell them so that they can govern themselves accordingly in determining whether they want you to be permitted to go home over night, and if so, whether it should be at 5:00 o'clock, 5:30 or 9:30 or some such hour, and also I wanted to get an impression from the jurors as to how late they can stay tonight, realizing that some might have a transportation problem, so I just wanted to canvass the situation generally and then talk with the attorneys

and the defendant if you think you cannot arrive at a verdict by 5:30 and see if they want to let you go home at that time or some other time.

"MR. BRYAN: At the present time—do you want me to quote any figures?

"THE COURT: No, I don't want you to quote any figures at all.

"MR. BRYAN: At the present time we haven't been able to come up with any decision right now and the way it looks right now I doubt seriously if we are in the next couple of hours, either.

"THE COURT: You think it's going to take you at least a couple of hours at a minimum?

"MR. BRYAN: Definitely, if not longer, the way the situation looks right now.

"THE COURT: Then it looks like you are going to deliberate into the evening. Would you folks prefer to continue to deliberate into the evening and go home at whatever hour we agree on, 9:00, 9:30, 10:00 o'clock or would you prefer to go home at 5:30 and resume with fresh minds tomorrow? I take it the other alternative, which please understand I am not threatening you as a possible need of staying over night because I think the attorneys will probably agree that you can go home over night, but there is that possibility, too, and have a night of free lodging, at least, and an evening meal and breakfast at the expense of the County, which is the pleasant aspect, although the other aspect is, of course, that you are not equipped with fresh clothing.

"MR. BRYAN: I think I would like to leave that up to a vote of the jurors, if it's all right with you.

"THE COURT: All right, fine.

"MR. BRYAN: Those in favor of going the duration, would they raise their hands? Those in favor of going at 5:30 and trying with a fresh mind in the morning?

"THE COURT: The jurors would prefer by eleven—we only have one hardy fellow to stay on.

"A JUROR: He said choice of 5:30 and duration. I am between 5:30 and duration.

"THE COURT: By 'duration,' you mean 9:00, 9:30?

"MR. BRYAN: I was saying—

"A JUROR: That hasn't been defined yet.

"THE COURT: You would like to go home at 5:30. Well, if they aren't willing for you to go home at 5:30, what is the choice of an hour to go home? Does anybody have to go home at a particular hour or doesn't the hour this evening, assuming it's reasonable, let's say, 10:00 o'clock at the outside, make any difference? Incidentally, I gather 10:00 o'clock would be agreeable, then, if you have to stay this evening, and then as to 5:30, is that an agreeable time, or is that awkward for anybody? It's not awkward for anybody, so you can stay until 5:30."

The judge left the jury room at 4:45 p. m. and, after conferring with counsel in chambers, recalled the jury and informed them that, by agreement of counsel and with his approval, it would be desirable for them to deliberate until 9 that evening. If they were unable to reach a verdict by that time, it was agreed that they would be permitted to go home and return the following morning when, the judge stated, they would "resume deliberations until you are able to arrive at a verdict." He added, "If you cannot, why, you cannot, but I am hopeful that you can and take the optimistic view now." The jury resumed its deliberations at 5:30 p. m. At 6 p. m., the jury had its evening meal, thereafter resumed its deliberations, and at 8:05 p. m. returned a verdict of guilty.

Defendant objected to the judge's entry into the jury room after being informed of its occurrence and again formally at sentencing. The objection was overruled, the judge declaring that a new trial would not be granted on that ground. Defendant appeals from the judgment.

We do not question the motives, good faith, or intentions which

prompted the trial judge to enter the jury room.[1] Further, we are not persuaded by defendant's principal argument that the judge's words and conduct amounted in coercive effect to a so-called "Allen" charge, which was declared improper by State v. Martin, 297 Minn. 359, 211 N. W. 2d 765 (1973). Rather, our concern is with the influence this particular type of intrusive communication has upon the integrity of the proceedings and the independent role and function of a jury during its deliberations on its verdict. We are compelled, however, to regard the communication recorded as relating to the case on trial since inquiry was made as to the "prospects" of arriving at a verdict by a certain time, coupled with the admonition, not included in the judge's prior instructions, that a jury in a criminal case "must be kept together until they arrive at a verdict." However painstakingly the judge sought to disavow any intention of shortening deliberations or hastening a verdict, the likelihood exists that some juror or jurors would have misunderstood or misinterpreted the judge's mere unexpected presence in their domain to mean either that it was about time a verdict was reached or, at the very least, that court officers and personnel would be inconvenienced by extended deliberations.

The state concedes error by the trial judge but, relying principally on State v. Schifsky, 243 Minn. 533, 69 N. W. 2d 89 (1955), would have the question of a new trial turn on whether the error was prejudicial to defendant's right to a fair trial. In the Schifsky case, we found harmless error in the trial court's recalling a jury upon its request and rereading a portion of the jury instructions in the absence of the defendant. We commented (243 Minn. 543, 69 N. W. 2d 96):

"As to the subject of 'communication between court and jury,' we would say that the general rule is that no communication whatever ought to take place between judge and jury after the cause has been presented to them by the charge of the court un-

---

[1] The record suggests that he was trying to avoid inconveniencing court personnel.

less in open court and, where practicable, in the presence of counsel involved in the litigation, and in criminal cases in the presence of the defendant. The public interest requires that parties to lawsuits or defendants on trial should have nothing to complain of or suspect in the administration of justice. This general rule, however, is subject to the modification that such communications must be shown to have been substantially prejudicial to the defendant or the situation such that there is reasonable suspicion of harm having come to the defendant or appellant thereby. Only a few jurisdictions remain that follow the strict rule that any communication is error whether prejudicial or not and that such error is cause for reversal. The majority of modern decisions follow the trend of liberalizing the rule to the extent that, if error is not prejudicial, then a new trial ought not to be granted or a judgment reversed."

We also observed in the Schifsky case (243 Minn. 542, 69 N. W. 2d 95) that the rule of Hoberg v. State, 3 Minn. 181 (262) (1859), namely, that any communication with the jury in the absence of the defendant is reversible error, was completely overthrown by the later cases, especially Oswald v. Minneapolis & N. W. Ry. Co. 29 Minn. 5, 11 N. W. 112 (1881). The force of that observation is diminished because, unlike the instant case and Hoberg, the communication in Schifsky took place in open court and at the jury's request. None of the cases cited in the opinion as modifying the rule of Hoberg dealt with the narrow question of whether a demonstration of prejudice is required before a new trial will be granted on the basis of unsolicited communications of the type here presented between the judge and jury in the jury room. In Hoberg, this court said (3 Minn. 184 [269]) :

"Another objection exists in the fact that, after the jury had retired to consider upon their verdict, the judge visited and had communication with them, without consent of, and apart from, the prisoner and his counsel. This is clearly irregular, whatsoever the motive, and howsoever harmless the communication. The character of the honorable district judge is a sufficient guaranty

that in the present case the motive that prompted the visit was not improper, and we have no doubt that the communication was limited, as stated in the case, to merely informing the jury that if they desired any information on matters of law, they should come into court and ask for it. Still a judge has no more right to communicate with a jury after it has retired, than any other person, and we must look upon his visit in this case in the same light that we would view the entry of any third person into the jury room while the jury was in consultation. The judge can have no communication with the jury, nor give them any the least information, except in open court, in the presence of, or after due notice to, the district attorney, and the prisoner or his counsel. We cannot guard too strictly [against] so dangerous a practice as is here complained of."

When considered in the light of current developments improving the administration of criminal justice and the limited scope of Hoberg's application, we believe that the rationale quoted above takes on new vitality requiring our reaffirmance and justifying our conclusion that in any criminal case any communication relating to the case occurring during a judge's uninvited entry into the jury room during deliberations and in the absence of defendant and counsel constitutes reversible error.

While courts of other jurisdictions have universally condemned the entry of the trial judge into the jury room and any communication with the jury outside the presence of defendant and counsel, not all have considered the error to be so inherently prejudicial as to require a new trial in every case. A majority of cases considering the question hold that any communication between the judge and jury after submission of the case, other than in open court and in the presence of defendant and counsel, is reversible error, either because of a finding of actual prejudice or because of a violation of a statute or procedural rule.[2]

In Danes v. Pearson, 6 Ind. App. 465, 33 N. E. 976 (1893), a

---

[2] See cases collected at 41 A. L. R. 2d 306.

civil case involving conduct very similar to that complained of here, the court noted its general rule that communications between a third party, bailiff, or clerk and a jury will be carefully scrutinized to discern possible prejudice, but that where the communication is between judge and jury in the jury room a new trial is required, stating (6 Ind. App. 470, 33 N. E. 978):

"* * * But a judge of the court occupies a different attitude toward the jury from that of any other person. In the heat and passion often engendered on the trial, in the conflicting arguments and statement of law by opposing counsel, the jury naturally look to the court to bring certainty out of the confusion. An act, a sentence, or a word from the presiding judge may exert a controlling influence on the verdict. It is for these reasons that a communication by the judge to the jury stands on a different basis from that of another person, and for a like reason the law should throw a higher degree of circumspection around such communications. It is also true that the presiding judge is charged with the duty of securing a fair and impartial trial to all parties litigant, and the presumption is that he will do his whole duty, and, in any communication that he may make to the jury, either in open court or privately, he will have a due regard for the rights of all concerned. Still we think that, owing to his superior influence, he should make no communication to the jury, except in open court, in the presence of the parties or their counsel, or after a full opportunity has been given them to be present."

In the more recent case of Laine v. State, 289 N. E. 2d 141, 144 (Ind. App. 1972), the court said:

"The sensitiveness and sanctity of jury deliberations are reflected in a great number of cases. In Searfoss v. Grissom, 85 Ind. App. 691, 155 N. E. 613 (1927), the trial judge read a single instruction out of the presence of one party or its counsel. If a judge enters the jury room and has any communication with the

jury during deliberations, regardless of the content or intent of such communications, such is reversible error." [3]

In Zaitzeff v. Raschke, 387 Mich. 577, 198 N. W. 2d 309 (1972), a civil case, the judge entered the jury room and instructed his reporter to reread a portion of the testimony. The Michigan court reversed, a majority saying (387 Mich. 579, 198 N. W. 2d 310):

"With what was written so plainly in 1961 for Wilson v. Hartley, 365 Mich. 188 [112 N. W. 2d 567], concerning the indefensible practice of entering the jury room while the jurors are there, no matter by whom done, one would think that this Court had said enough to prevent what took place here. Yet the practice seems to go on, and on, and on, encouraged occasionally by 'no prejudice shown' conclusions of a group of Justices who cannot hope to know what was said, or done, or gestured, or hinted, in the sanctity of the jury room."

In a murder case, People v. Heard, 388 Mich. 182, 200 N. W. 2d 73 (1972), the Michigan court, relying on Zaitzeff, unanimously reversed a decision of its intermediate appellate court affirming defendant's conviction (31 Mich. App. 439, 188 N. W. 2d 24 [1971]) where the trial judge entered the jury room without invitation of the jury or request of counsel and delivered 21 exhibits to them.

There are, we believe, sound reasons which support our reaffirmation of the strict rule. It is fundamental that all proceedings in the trial of a criminal case shall be open and public and shall be conducted in the presence of defendant and counsel.[4] The

---

[3] See, also, Elliott-Greer Office Supply Co. v. Martin, 54 S. W. 2d 1068 (Tex. Civ. App. 1932), reversed on other grounds, 126 Tex. 112, 86 S. W. 2d 635 (1935); Du Cate v. Town of Brighton, 133 Wis. 628, 114 N. W. 103 (1907); State v. Murphy, 17 N. D. 48, 115 N. W. 84 (1908).

[4] Minn. St. 631.01 requires defendant to be "personally present." See, also, Rule 26.03, subd. 1, Rules of Criminal Procedure, effective July 1, 1975.

same is true with respect to any communication between the judge and jury after the case is submitted and the jury has begun deliberations.[5] No conceivable circumstances occur to us which would make it necessary for a judge alone to communicate with the jury about the case by entering uninvited into the jury room during deliberations. If orderly supervision of the docket or convenience of the jury, the parties, the lawyers, or court personnel requires that the judge be informed as to the prospect of the jury's reaching a verdict by a certain time, the proper procedure is to recall the jury to the courtroom. Thereupon, in the presence of defendant and counsel, the judge should direct the jury foreman to poll the jury in private in the jury room and then to return and inform the judge whether a majority does or does not believe a verdict can be reached by a certain time. See, People v. Luther, 53 Mich. App. 648, 219 N. W. 2d 812 (1974); State v. Klein, 200 N. W. 2d 288 (N. D. 1972). Such a procedure entails no risk of impropriety or even the appearance of impropriety.

The trial judge, as the neutral factor in the interplay of our adversary system, is vested with the responsibility to ensure the integrity of all stages of the proceedings. This pervasive responsibility includes avoidance of both the reality and the appearance of any impropriety by so directing and guiding the proceedings as to afford the jury fair and independent opportunity to reach an impartial result on the issue of guilt. Thus, the trial judge's position in performing his role and function before submission of the case is a powerful one and makes him an imposing figure in the minds of the jurors. Called upon to perform unaccustomed duties in strange surroundings, the average juror is very sensitive to any hint or suggestion by the judge—however proper the judge's conduct. When during the judge's instructions it is impressed upon the jurors that they

---

[5] Minn. St. 631.11. See, also, Rule 26.03, subd. 19, Rules of Criminal Procedure, effective July 1, 1975; A. B. A. Standards for Criminal Justice, Trial by Jury (Approved Draft, 1968) § 5.3.

alone are the exclusive judges of the facts and the credibility of the witnesses, and that no act, word, sign, gesture, or inflection of voice by him is to influence their deliberations, the reality of the jury's independent function emerges. The withdrawal of the jury into a separate room, the administration of the oath to their custodians the bailiffs, the traditionally locked door, and other safeguards which prevent any intrusion during deliberations, all serve to emphasize meaningfully the independence of the jury's final, collective, decisional process and to create an atmosphere in which any incorrect notions jurors may have that they are to be influenced by the judge might be removed.

In view of the judge's dominant role during earlier stages of the trial, an uninvited entrance into the sanctity of the jury room for any purpose offends the integrity of the proceedings and risks influencing the jury's decisional process in some degree, however difficult to define or impossible to measure. At the very least, such unwarranted entrance disrupts the jury's deliberations, intrudes upon their independence, and transgresses the carefully drawn lines of demarcation between the functions of the trial judge and the functions of the jury. When such an intrusion occurs, we believe there is a significant interference with the orderly decisional process, and prejudice to the process results by the implication that the judge has the prerogative of entering the jury room and there exercising the same dominant authority he possesses in the courtroom.[6] Further, when such an intrusion occurs in the absence of defendant and counsel, the adversary system of demonstrating prejudice by what was gestured or hinted or effected by other unrecorded conduct of those present is frustrated. When the communication relates to the case, the harm is compounded, for the intrusion, if not demonstrably coercive, violates defendant's right to be present

---

[6] The state's argument that the interruption was no different from the judge ordering the bailiff to interrupt and to arrange for the evening meal for the jury is not persuasive. The bailiff's role is not a dominant one, his primary function being to be of service to the jurors.

at all stages of the proceedings. A strict rule prohibiting such intrusions has the salutary effect of minimizing the interruptions of the jury during deliberations, eliminating the necessity of determining the existence of actual prejudice and, hopefully, discouraging repetition of the intrusions.

The rule is also consistent with the principles underlying A. B. A. Standards for Criminal Justice, The Function of the Trial Judge (Approved Draft, 1972) §§ 1.5 and 5.2. Section 1.5 states in part:

"Duty to maintain impartiality.

"The trial judge should avoid impropriety and the appearance of impropriety in all his activities, and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

Section 5.2 reads as follows:

"Control over and relations with the jury.

"(a) The trial judge should take appropriate steps ranging from admonishing the jurors to sequestration of them during trial, to insure that the jurors will not be exposed to sources of information or opinion, or subject to influences, which might tend to affect their ability to render an impartial verdict on the evidence presented in court.

"(b) The trial judge should require a record to be kept of all communications received by him from a juror or the jury after the jury has been sworn, and he should not communicate with a juror or the jury on any aspect of the case itself (as distinguished from matters relating to physical comforts and the like), except after notice to all parties and reasonable opportunity for them to be present."

While these guidelines make an exception for matters relating to physical comforts, the exception does not, we believe, contemplate the uninvited intrusion by the judge into the jury room.

Finally, because the communication related to the case, we do not overlook the right of the defendant to be present at all stages

of his trial, recently reaffirmed by the United States Supreme Court in Rogers v. United States, 422 U. S. 35, 95 S. Ct. 2091, 45 L. ed. 2d 1 (1975). When the trial judge in a criminal case enters the jury room and communicates with the jury without any effort to secure the presence of the defendant or his counsel, the defendant's right to be present and represented at all stages of the proceeding has been violated.

Reversed.

MR. JUSTICE SCOTT took no part in the consideration or decision of this case.