Trevor Anthony BROWN, Appellant,

v.

STATE of Minnesota, Respondent.

No. A–03–1588.

Supreme Court of Minnesota.

July 1, 2004.

John M. Stuart, State Public Defender, Sara Lynne Martin, Assistant Public Defender, Minneapolis, MN, Relator/Appellant's Attorneys.

Mike Hatch, Minnesota Attorney General, St. Paul, MN, James C. Backstrom, Dakota County Attorney, Nicole E. Nee, Assistant County Attorney, Hastings, MN, Respondent's Attorneys.

## OPINION

HANSON, Justice.

Appellant Trevor Anthony Brown was convicted of aiding and abetting first-degree felony murder and was sentenced to life in prison. Brown sought post-conviction relief arguing that: (1) the district court erred by failing to give a jury instruction on accomplice testimony; (2) he was denied a fair trial because one of the state's witnesses made references to his post-arrest silence in violation of his right to remain silent; (3) the district court improperly communicated with the jury in the jury deliberation room; (4) trial counsel was ineffective; and (5) the non-accomplice evidence was insufficient to support the conviction. The postconviction court denied Brown's petition for postconviction relief, essentially determining that any errors were harmless and sufficient evidence existed to convict Brown. We reverse and remand for a new trial.

Sometime after 10 p.m. on the evening of December 13, 1998, Tucker Calvin Wilson joined three acquaintances—Michelle Young, Allen Jamal Robinson, and Brown—after the three had been drinking for several hours. Wilson drove the group to a church near the Mendota Bridge and the four individuals proceeded to climb down the embankment under the bridge. Wilson's body was later discovered at that site. An autopsy indicated that he had died of multiple blunt force head and neck injuries.

Brown was ultimately indicted on several counts of first- and second-degree murder. At his trial, both Robinson and Young testified for the state. Although their testimony differed to some degree, both of them implicated Brown as the primary assailant. Robinson testified that after Wilson shoved him down a rocky slope, causing him to injure his head on the rocks, he retaliated by striking Wilson in the face. He claimed that he then ascended the embankment without participating any further in Wilson's death. Robinson said that he witnessed Brown and Wilson engaged in a fistfight; he continued his ascent of the slope without intervening; and, moments later, he saw Young and Brown walking up the embankment.

Young testified that she witnessed both Robinson and Brown kicking and throwing rocks at Wilson. She said that she attempted to flee but was stopped by Robinson, who required her to search Wilson for car keys, identification, and money. After Robinson escorted her up the embankment, she looked back down the slope and saw Brown "still kicking [Wilson] and yelling at him and telling him to die." Young testified that the beating lasted for "a good half an hour."

Young testified that Robinson, Young, and Brown then drove Wilson's car to the

Mount Airy apartment complex, where an acquaintance of Robinson rented an apartment. At the Mount Airy apartment complex, Brown, Young, and Robinson passed Felicia Rocha. Rocha testified that she noticed red spots on Brown's shirt and pants. Rocha also testified that she saw something red on Robinson's shoe and the bottom of his pant legs.

Richard Propps was a guest at the apartment when the three arrived. He testified that he spotted blood on Brown's clothing and immediately decided to leave because he "didn't like what it looked like * * *." Young testified that Brown and Young went directly to the bathroom where Brown removed his pants, socks, and shoes and changed into a pair of pants and shoes given to him by Robinson. Security camera tapes show that Brown entered the apartment in light colored pants, yet exited wearing dark colored pants.

Young's sister, Patricia Young, also testified for the state. She said that after the murder, Brown admitted to her that he had beaten and kicked Wilson to death. Finally, the state elicited testimony from Sergeant Bradley Wayne that made two references to Brown's exercise of his right to remain silent. When defense counsel objected after the second reference, the district court struck the testimony from the record and cautioned the jury to disregard it. Prior to jury deliberations, the court advised the jury again that, "Any testimony that the court has excluded or told you to disregard is not evidence and must not be considered."

Brown's attorney did not request a jury instruction on accomplice testimony and none was given. After the jury retired to deliberate, the district court judge made at least three visits to the jury room. On each visit he was accompanied by a court reporter and he made a record.

On the judge's first visit to the jury room, he discussed adjournment of jury deliberations for September 28, 1999.

THE COURT: The record should reflect that I can't talk to you about anything unless it goes on the record other than what I did before. Record should reflect that the Judge is in the jury room. The attorneys have been appraised [sic] of what I propose to do, and they have waived their appearance in the jury deliberation room. The jury is present.

The jury has sent me a note indicating that they feel they've gone as far as they're going to go this evening and wish to adjourn. That is the status of the matter?

JUROR: Yes.

THE COURT: All right. Then I would advise you of this. It is now time that the Court will interrupt and adjourn your deliberations until 9:00 a.m. tomorrow morning and permit you to return to your homes.

The judge's second appearance in the jury room was in response to a jury question on September 30, 1999.

THE COURT: The record should reflect that the Court is in the jury room. The record should reflect that the foreperson of the jury has sent a question that says Page 15, 11.15, reference. Second element. Does cause of death of Calvin Wilson mean the defendant acting alone. Question mark. Define the word cause.

The record should reflect that I have conferred with the attorneys of record in chambers regarding this question. The record should further reflect that the attorneys of record have agreed that the Court may appear before the jury without their presence and without the presence of the defendant. The question is on what you reference as 11.03. As I

read the copy of the instructions I've sent to you, that's murder in the second degree elements. 11.03 just simply means the reference number in the jury instruction guides. I would simply have to reread to you this second element that says defendant caused the death of Calvin Wilson. As to defining the word cause, I have to leave that to the common understanding and common meaning that all of you accept.

The jury continued their deliberations. Later that day, the judge, accompanied by counsel, paid a final visit to the jury room in order to respond to a jury question regarding the elements of aggravated robbery.[1]

THE COURT: All right. I don't want to know where your deliberations are at this time as far as what has been decided, what hasn't been decided, but do you think realistically there's any possibility of resolving this this evening?

JUROR: Yes.

THE COURT: I'm going to invite the attorney [sic] in to listen to what I tell you now.

(Attorneys of record present in jury room.)

THE COURT: The record should reflect that Mr. Shea, Ms. Nee from the county attorney's office are present. Mr. Thompson representing the defendant is present. We are in the jury deliberation room. The presence of the defendant has been waived by the defense counsel.

You asked the following question: Please clarify engaged in the act of committing or attempting to commit crime

of aggravated robbery under the elements of murder in the first degree against the definition which was clarified yesterday as taking physically from the victim. Signed Richard Bright. 1640 hours. Today's date. Foreperson.

I will read you something at this time, and I will leave you a copy of it. The statutes of Minnesota provide that a person is guilty of an attempt to commit a crime when the intent to commit the crime the person does an act which is a substantial step towards and more than a mere preparation for the commission of the crime.

The jury rendered not guilty verdicts all on first-degree murder counts except that for aiding and abetting first-degree felony murder, for which it found Brown guilty. The jury also found Brown guilty of all second-degree murder counts. Brown was sentenced to life in prison on the conviction of aiding and abetting first-degree felony murder.

Brown did not take a direct appeal from his conviction, but sought postconviction relief, asserting several errors and arguing that the non-accomplice testimony was insufficient to support the conviction. The postconviction court denied Brown's petition and he appeals.

I.

■ We will first address Brown's sufficiency of the evidence arguments. Brown argues that his conviction should be reversed and the remaining charges dismissed because the non-accomplice testimony was insufficient to corroborate the

---

1. Prior to entering the jury room for the third time, the trial judge discussed the jury question with counsel and stated:

I will go in first and ask them if there's any possibility in arriving at a verdict tonight, at the conclusion of which I'll check the blackboards. If there's nothing on there or the [sic] erase them, I don't care, then I'll ask you to step in.

The record does not indicate the contents of the blackboard.

accomplice testimony and did not support the conviction.

■ We conduct "a rigorous review of the record to determine whether the evidence, direct and circumstantial, viewed most favorably to support a finding of guilt, was sufficient to permit the trial court to reach its conclusion." *DeMars v. State,* 352 N.W.2d 13, 16 (Minn.1984) (quoting *State v. Mytych,* 292 Minn. 248, 252, 194 N.W.2d 276, 279 (1972)). "In reviewing the sufficiency of the corroborating evidence of an accomplice's testimony, a reviewing court will view the evidence in the light most favorable to the state and will resolve all conflicts in the evidence in favor of the verdict." *State v. Norris,* 428 N.W.2d 61, 66 (Minn.1988).

The non-accomplice corroborating evidence established that (1) Brown possessed a motive and intent to rob Wilson; (2) Brown had an opportunity to rob and murder Wilson; (3) Brown attempted to cover up the crime, by changing clothing, cleaning Wilson's car, and lying to the police; and (4) Brown admitted to one witness that he had beaten Wilson to death. Two non-accomplice witnesses testified that, prior to the murder, Brown had asked them to assist in robbing Wilson. Two other non-accomplice witnesses noticed blood on Brown's clothing shortly after the murder. A surveillance camera shows that Brown changed clothes in the Mount Airy apartment complex soon after the murder. There was evidence that Wilson's car had contained a six-disc C.D. changer and another non-accomplice witness testified that shortly after Wilson's death, Brown attempted to sell him a six-disc C.D. changer. Finally, Young's sister, Patricia, another non-accomplice witness, testified that Brown admitted to her that he had beaten and kicked Wilson to death.

We conclude that the substantial non-accomplice evidence linking Brown to Wilson's murder was sufficient to corroborate the testimony of Robinson and Young and to support the conviction of Brown for aiding and abetting first-degree felony murder.

## II.

■ Brown argues that individual and cumulative errors occurred at trial that necessitate a new trial. We will focus first on the claim that the district court judge erred by visiting the jury room to discuss issues relating to the case. In Brown's petition for postconviction relief, he argued that the judge's three visits to the jury room during deliberations constitute reversible error. Further, he argued that the judge's reference during the first visit, that "I can't talk to you about anything unless it goes on the record *other than what I did before,*" raises the inference that there was a fourth visit with the jury and that no record was made of that visit.

The postconviction court determined that all of the judge's communications with the jury were with the knowledge and consent of counsel and, even if there was error, that such communications could not have affected the verdict and thus were harmless.

Each of the judge's communications with the jury constituted error, for several reasons. First, the judge violated the right of Brown to be present at every stage of the trial, including all communications with the jury. *See Rushen v. Spain,* 464 U.S. 114, 117, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983); Minn. R.Crim. P. 26.03, subd. 1(1). Although Brown could have waived the right to be present, and his counsel purported to do so, we have held that a waiver by counsel is ineffective unless it is made with the informed consent of the defendant. *State v. Ware,* 498 N.W.2d 454, 457 (Minn. 1993); *State v. Sessions,* 621 N.W.2d 751,

756 (Minn.2001). There is no indication in this record that Brown personally waived the right to be present or consented to such a waiver by his counsel.

Second, the judge violated the requirement that all communications with a deliberating jury be conducted in open court. The Criminal Rules mandate that a deliberating jury that wishes to be informed on a point of law "shall be conducted to the courtroom." Minn. R.Crim. P. 26.03, subd. 19(3). At least three times, the judge communicated with the jury without bringing them to the courtroom.

Third, the judge may have failed to place all communications with the jury on the record. In *Sessions,* we said:

> Generally speaking, a reconstructed record cannot be as precise or comprehensive as a record made at the time of trial. At a minimum, the lack of a record compounds the lack of confidence society can have in the integrity of proceedings. We caution district courts to make a contemporaneous record of each stage of trial, particularly a stage as delicate as communications with the jury and with counsel during deliberations. A record is critical to ensure adequate appellate review and a fair process.

621 N.W.2d at 756. Here, there is at least some ambiguity as to whether the judge communicated with the jury on a fourth occasion, off the record. Also, because the three recorded communications did not occur in open court, we cannot be certain that the record of each of those visits was complete, beginning the instant the judge entered the jury room and including everything said until the instant the judge departed.

Fourth, the judge improperly entered the jury room after deliberations had begun. In *State v. Mims,* we made it clear that the judge is not to enter the jury room during deliberations, stating:

> In view of the judge's dominant role during earlier stages of the trial, an uninvited entrance into the sanctity of the jury room for any purpose offends the integrity of the proceedings and risks influencing the jury's decisional process in some degree, however difficult to define or impossible to measure. At the very least, such unwarranted entrance disrupts the jury's deliberations, intrudes upon their independence, and transgresses the carefully drawn lines of demarcation between the functions of the trial judge and the functions of the jury.

306 Minn. 159, 169, 235 N.W.2d 381, 388 (1975).

The state argues, and the postconviction court found, that any error in communicating with the jury was harmless. It is true that our precedent has recognized that a harmless error analysis is appropriate for the denial of a defendant's right to be present for all communications with the jury, and even for the district court's failure to make a complete record of those communications. *Sessions,* 621 N.W.2d at 756; *Ware,* 498 N.W.2d at 457–58. In *Mims,* however, we held that the court's entry into the jury room to communicate with a deliberating jury relating to the case is reversible error that is not subject to a harmless error analysis. 306 Minn. at 165, 235 N.W.2d at 386. There, we surveyed the decisions of other jurisdictions on a judge's visit to the jury room, noted that a majority of jurisdictions applied a harmless error analysis, but reaffirmed our strict rule that "in any criminal case any communication relating to the case occurring during a judge's uninvited entry into the jury room during deliberations and in the absence of defendant and counsel constitutes reversible error." 306 Minn. at 165, 235 N.W.2d at 386. We went on to say:

When such an intrusion occurs, we believe there is a significant interference with the orderly decisional process, and prejudice to the process results by the implication that the judge has the prerogative of entering the jury room and there exercising the same dominant authority he possesses in the courtroom. Further, when such an intrusion occurs in the absence of defendant and counsel, the adversary system of demonstrating prejudice by what was gestured or hinted or effected by other unrecorded conduct of those present is frustrated. When the communication relates to the case, the harm is compounded, for the intrusion, if not demonstrably coercive, violates defendant's right to be present at all stages of the proceedings. A strict rule prohibiting such intrusions has the salutary effect of minimizing the interruptions of the jury during deliberations, eliminating the necessity of determining the existence of actual prejudice and, hopefully, discouraging repetition of the intrusions.

306 Minn. at 169–70, 235 N.W.2d at 388. (Footnote omitted.)

The state does not ask us to overrule *Mims* or provide any compelling reason to do so. We have again surveyed the decisions of other jurisdictions since *Mims* was decided in 1975. Virtually all jurisdictions agree that it is error for the judge to visit the jury room during deliberations.[2] Many continue to apply a harmless error analysis, at least where there is a complete record of the judge's communication in the jury room.[3] But others apply the strict rule, for the same reasons that we articulated in *Mims*.[4] And jurisdictions that do not otherwise apply a strict rule may do so where the record of the communication is not complete.[5]

Our district courts have been on notice of, and presumably have followed, the strict rule laid down in *Mims* for several decades. We see no reason to abandon that rule now, particularly in a case where there is some question whether the record contains all communications with the jury. We, therefore, grant Brown's request for a new trial.

2. *See, e.g., U.S. v. Bishawi,* 186 F.Supp.2d 889 (S.D.Ill.2002); *State v. Moya,* 138 Ariz. 12, 672 P.2d 964 (1983); *State v. Hilliard,* 133 Ariz. 364, 651 P.2d 892 (1982); *Goff v. State,* 329 Ark. 513, 953 S.W.2d 38 (1997); *People v. Knighten,* 105 Cal.App.3d 128, 164 Cal.Rptr. 96 (1980); *State v. Estrada,* 69 Haw. 204, 738 P.2d 812 (1987); *People v. Olson,* 66 Mich. App. 197, 238 N.W.2d 579 (1975); *State v. McMahon,* 186 Wis.2d 68, 519 N.W.2d 621 (1994).

3. *See, e.g., U.S. v. Nosov,* 221 F.Supp.2d 445 (S.D.N.Y.2002) (visit to ensure deliberations proceeded smoothly); *State v. Moya,* 138 Ariz. 12, 672 P.2d 964 (1983) (visit to discuss recess); *People v. Knighten,* 105 Cal.App.3d 128, 164 Cal.Rptr. 96 (1980) (visit to read requested portions of the testimony); *Hogan v. State,* 274 Ind. 119, 409 N.E.2d 588 (1980) (visit to answer question by telling jury to read the instructions); *State v. Neal,* 685 S.W.2d 271 (Mo.Ct.App.1985) (visit to respond to juror questions of law); *State v. Settle,* 670 S.W.2d 7 (Mo.Ct.App.1984) (visit to ask what question the jury wanted answered); and *State v. Burton,* 112 Wis.2d 560, 334 N.W.2d 263 (1983) (visit to check on progress of deliberations and discuss recess).

4. *See, e.g., Graves v. State,* 377 So.2d 1129 (Ala.Crim.App.1979) (visit to discuss recess); *Tarry v. State,* 289 Ark. 193, 710 S.W.2d 202 (1986) (visit to answer question about parole eligibility); *State v. Hilliard,* 133 Ariz. 364, 651 P.2d 892 (1982) (visit to discuss recess); *People v. Olson,* 66 Mich.App. 197, 238 N.W.2d 579 (1975) (visit to discuss recess); *State v. Graff,* 96 Nev. 474, 611 P.2d 196 (1980) (visit to answer jury questions).

5. *See, e.g., State v. Corrales,* 121 Ariz. 104, 588 P.2d 846 (1978); *Coley v. State,* 431 So.2d 194 (Fla.Ct.App.1983); *Caldwell v. State,* 340 So.2d 490 (Fla.Ct.App.1976); *State v. Tapson,* 307 Mont. 428, 41 P.3d 305 (2001).

III.

Because we hold that the district court's communications with the jury require a new trial, we need not consider whether the other issues raised by Brown would support a new trial. But we will address two of those issues briefly to provide guidance for the new trial.

The district court agreed that the reference in the testimony of Officer Wayne to Brown's post-arrest silence was inadmissible, ordered it stricken and provided a curative instruction. We trust that the state will prepare its witnesses to avoid any reference to Brown's post-arrest silence in any new trial.

■ Further, if the state presents the testimony of either or both Robinson or Young in the new trial, our decision in *State v. Strommen* requires that the accomplice testimony instruction be given. 648 N.W.2d 681, 689 (Minn.2002).[6]

Reversed and remanded.

---

6. 10 Minn. Dist. Judges Ass'n; *Minnesota Practice—Jury Instruction Guides, Criminal,*

CRIMJIG 3.18 ("Accomplice Testimony") (4th ed.1999).