*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0767**

State of Minnesota,
Respondent,

vs.

David Mendoza,
Appellant.

**Filed April 4, 2016
Affirmed
Stauber, Judge**

Hennepin County District Court
File No. 27-CR-14-8379

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jennifer Workman Jesness, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Stauber, Presiding Judge; Connolly, Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

**STAUBER**, Judge

On appeal from his conviction of first-degree criminal sexual conduct, appellant argues that structural error occurred when the district court judge was present during jury

deliberations and its comments influenced the jury to reach a verdict. In the alternative, appellant argues that a *Schwartz* hearing is necessary to determine the nature of the communications between the jurors. We affirm.

**FACTS**

In March 2014, appellant David Mendoza was charged with one count of first-degree criminal sexual conduct and one count of second-degree criminal sexual conduct. At trial, the jury was shown a video-taped statement appellant made to police wherein he admitted to sexually penetrating his cousin. Later, during deliberations, the jury requested "to view the video again." When the jury reconvened in the courtroom, the district court judge instructed the jury that transcripts of the video were available "to aid . . . in watching the video," but that they would be collected when the video was over. The jury foreman then informed the district court judge that the jury only wanted to view a portion of the video. But after an off-the-record discussion, the district court judge told the jury that they were required by rule to watch the entire video. The jury then decided to discuss amongst themselves whether they wanted to watch the entire video.

Shortly after the jury left the courtroom, the deputy informed the district court judge that the jury had reached a verdict. But before allowing the jurors back into the courtroom, the district court judge discussed with the parties whether to "make" the jurors watch the entire video again before rendering their verdict. During this discussion, counsel for appellant informed the district court judge that he "noticed . . . two of the jurors in the back row as they were seated down they picked up their copies of the transcript [and] started reviewing the first couple pages. One of the [jurors] pointed to his

2

copy of the transcript and . . . the other juror ended up nodding his head." Trial counsel further stated that his "precise concern" is the jurors "utilizing" the transcript to "just answer their question."

The district court judge called the jury back into the courtroom and instructed the jury that "if you did look at the transcript, . . . to ignore whatever it is you read." The district court judge further stated that if the jury had read any part of the transcript, the jury would need to view the video in its entirety. The jury foreman then suggested that the jury view the video, and after the video was played in its entirety, the jury retired to deliberate.

The jury found appellant guilty of the charged offenses. Appellant was then sentenced to the presumptive guidelines sentence of 144 months in prison. This appeal followed.

**D E C I S I O N**

**I.     Alleged structural error**

A defendant has a constitutional right to a trial by jury for any offense that is punishable by incarceration. *State v. Fluker*, 781 N.W.2d 397, 400 (Minn. App. 2010). A "cardinal principle" of the right to a jury trial is that "the deliberations of the jury shall remain private and secret in every case," and that "[t]he presence of any person other than the jurors . . . impinges upon that privacy and secrecy." *State v. Crandall*, 452 N.W.2d 708, 710 (Minn. App. 1990) (quotation omitted). Consistent with these principles, Minnesota Rule of Criminal Procedure 26.03, subdivision 20(2)(b), requires the district court to "instruct the jury to suspend deliberations during the review" of evidence.

3

Appellant claims that the two jurors were "deliberat[ing] together in open court" when one of the jurors pointed to his copy of the transcript and the other juror nodded his head. Appellant argues that the district court's "presence" in the courtroom during these "deliberations," coupled with its "invitation to the jury to reconsider whether they wanted to watch the video because of its length," constituted structural error. Appellant further claims that this error was compounded by the district court's failure to instruct the jury to suspend deliberations when they entered the courtroom. Thus, appellant contends that he is entitled to an automatic reversal and a new trial.

"Generally, there are two types of error: structural error and trial error." *Colbert v. State*, 870 N.W.2d 616, 624 (Minn. 2015). "[S]tructural errors are defects in the constitution of the trial mechanism" that "affect the entire trial from beginning to end and undermine the structural integrity of the criminal tribunal itself." *Id.* (quotations omitted). Structural errors "defy analysis by 'harmless-error' standards" and therefore "require automatic reversal of a conviction." *State v. Kuhlmann*, 806 N.W.2d 844, 851 (Minn. 2011) (quotation omitted). Conversely, a trial error "may be quantitatively assessed in the context of the other evidence presented in order to determine whether it was harmless beyond a reasonable doubt." *Colbert*, 870 N.W.2d at 624 (quotation omitted). "Most errors are trial errors, which are reviewed under a prejudicial-impact analysis to determine whether they require reversal and a new trial." *State v. Watkins*, 840 N.W.2d 21, 25–26 (Minn. 2013). "Structural errors resulting in automatic reversal occur only in a very limited class of cases." *Colbert*, 870 N.W.2d at 624 (quotation omitted).

Although it did not use the phrase "structural error," the supreme court in *State v. Mims*, held that a judge's uninvited entry into the jury room during deliberations and in the absence of the defendant and counsel requires automatic reversal because it "offends the integrity of the proceedings and risks influencing the jury's decisional process in some degree, however difficult to define or impossible to measure." 306 Minn. 159, 169, 235 N.W.2d 381, 388 (1975). In that case, the jury had been deliberating for about four hours when the judge "entered the jury room," and asked the jurors about the "prospects" of their "arriving at a verdict." *Id.* at 160-61, 235 N.W.2d at 383. The judge "wanted to canvass the [prospects of a verdict] generally [with the jurors] and then talk with the attorneys and the defendant." *Id.* In reversing, the supreme court stated that the trial judge is an "imposing figure," and that when this "imposing figure" intrudes into the jury's deliberative process, "there is a significant interference with the orderly decisional process, and prejudice to the process results by the implication that the judge has the prerogative of entering the jury room and there exercising the same dominant authority he possesses in the courtroom." *Id.* at 168-69, 235 N.W.2d at 387-88. The court reasoned that the concern when the judge intrudes is that he or she can exert a "controlling influence," and for this reason, "a communication by the judge to the jury stands on a different basis from that of another person, and for a like reason the law should throw a higher degree of circumspection around such communications." *Id.* at 166, 235 N.W.2d at 386 (quotation omitted).

A similar conclusion was reached in *State v. Brown*, 682 N.W.2d 162, 167-68 (Minn. 2004). In that case, the judge went into the jury room three times and questioned

5

the jury as to whether there was "realistically . . . any possibility" of the jury reaching a verdict that evening." *Id.* at 165. In reversing the defendant's conviction, the supreme court applied the "strict rule" from *Mims*. *Id.* at 168. The court reasoned that by going into the jury room after deliberations had begun, the judge inserted himself into the jury's deliberative process. *Id.* at 167.

Appellant argues that because his case is similar to *Brown* and *Mims*, he is entitled to a new trial. Conversely, the state argues that this case is more like *State v. Everson*, 749 N.W.2d 340 (Minn. 2008), and *State v. Nissalke*, 801 N.W.2d 82 (Minn. 2011), wherein the supreme court declined to apply the strict rule of *Mims*.

In *Everson*, the district court responded to the jury's request to replay tape recordings by allowing the jury, with the defendant's consent, to listen to the recordings in the courtroom in the presence of only the court clerk and a non-lawyer employee of the county attorney's office who operated the playback equipment. 749 N.W.2d at 344. In holding that structural error was not committed, the supreme court stated that "the procedure used here, while perhaps inadvisable, is not comparable to an uninvited entry by the judge into the jury room. *Id.* at 348 (recognizing that a court clerk and non-lawyer employee of the county attorney's office stand "on a different basis" from a judge).

More recently, in *Nissalke*, the district court entered the jury room to deliver corrected verdict forms and the trial exhibits a few minutes after the sworn bailiffs escorted the jury from the courtroom to the jury room. 801 N.W.2d at 94-95. Although the district court informed the jury that he would be coming in with the corrected verdict forms, neither the defendant nor his counsel were present during the district court's brief

6

appearance in the jury room. *Id.* In rejecting the defendant's argument that under *Mims*, the district court's entry into the jury room constituted an error requiring automatic reversal, the supreme court stated that "[t]he *Mims* rule . . . is triggered only when the jury is into the deliberative process." *Id.* at 92, 96. The court held that

> under the unique circumstances presented here, where the district court's entry into the jury room occurred a few minutes after the jury left the courtroom and the record does not establish that the jury had begun formal deliberations, the entry does not undermine the traditional safeguards preventing intrusions during deliberations or the independence of the jury's final, collective, decisional process.

*Id.* at 98.

We conclude that this case is akin to *Nissalke* and *Everson*, and distinguishable from the circumstances in *Brown* and *Mims* because the district court judge did not insert himself into the decision-making process. Unlike *Mims* and *Brown*, the district court judge did not enter the jury room, nor did he communicate with the jury in the absence of appellant and counsel. Instead, the proceedings were conducted in open court where the jury knew that the judge, appellant, and counsel would be present, and observed their presence in the courtroom. Moreover, the district court judge's comment about the length of the video was irrelevant to the deliberation process. The jury had already viewed the video once, and knew its length. And the jury ultimately viewed the video a second time before retiring for final deliberations.

Finally, despite appellant's argument to the contrary, the district court judge instructed the jury before they retired to deliberate to "converse among itself only in the jury room and only after the entire jury has assembled." The jury was also instructed to

7

"avoid any conversations about the case outside that jury room." And after the jury asked to review the video and had returned to the courtroom, the district court judge cautioned the jury that they could not keep the transcript and that it could only be used to "aid you in watching the video." The district court judge further reminded the jury to "remember from my instructions you only talk to each other in the jury room." Therefore, because the jury was properly instructed, and the district court judge did not insert himself into the decision-making process, appellant cannot establish structural error.[1]

## II. *Schwartz* hearing

Appellant argues that if this court "is not inclined to reverse [his] conviction for structural error, then [his case] should be remanded for a *Schwartz* hearing." "The purpose of a *Schwartz* hearing is to determine whether a jury verdict is the product of misconduct," such as improper contact between the district court and the jury. *State v. Greer*, 635 N.W.2d 82, 92 (Minn. 2001). Such a hearing allows the defendant to question jurors under oath to determine whether any jury misconduct occurred or whether any outside influence improperly affected the verdict. *Schwartz v. Minneapolis Suburban Bus Co.*, 258 Minn. 325, 328, 104 N.W.2d 301, 303 (1960). Before a motion for a *Schwartz* hearing will be granted, the defendant must establish a prima facia case of jury misconduct. *State v. Larson*, 281 N.W.2d 481, 484 (Minn. 1979). "To establish a prima facie case, a defendant must submit sufficient evidence which, standing alone and unchallenged, would warrant the conclusion of jury misconduct." *Id.* But a *Schwartz*

---

[1] We note that appellant makes no claim that his trial was prejudiced.

hearing is inappropriate where the claim of misconduct is "wholly speculative and . . . not based on any evidence reasonably suggesting that misconduct had occurred." *State v. Mings*, 289 N.W.2d 497, 498 (Minn. 1980).

Appellant did not request a *Schwartz* hearing in district court. Because review is normally limited to consideration of the issues presented to or decided by the district court, appellant has waived the issue. *See Everson*, 749 N.W.2d at 349. Moreover, to obtain a *Schwartz* hearing, "a defendant must show actual misconduct resulting in prejudice or present a claim of outside influence or extraneous information." *State v. Bauer*, 471 N.W.2d 363, 367 (Minn. App. 1991), *review denied* (Minn. July 24, 1991). Here, appellant failed to establish prejudice and he does not allege that facts came to light after the return of the verdict that indicate outside influence. Moreover, the record reflects that the jury was properly instructed. Thus, appellant cannot meet his burden to show that he is entitled to a *Schwartz* hearing.

**Affirmed.**