**STATE of Minnesota, Respondent,**

v.

**Antonius HUDSPETH, Appellant.**

No. C1–94–1670.

Supreme Court of Minnesota.

July 28, 1995.

Mark D. Nyvold, St. Paul, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, and Susan Gaertner, Ramsey County Attorney, Darrell C. Hill, Assistant Ramsey County Atty., St. Paul, for respondent.

## OPINION

COYNE, Justice.

Defendant was convicted of first-degree murder and aggravated robbery for killing one man and robbing another in separate incidents on October 5, 1993. He was sentenced to consecutive prison terms of life plus 68 months. On appeal he seeks an outright reversal of his convictions on the ground that the evidence that he intentionally aided or abetted the commission of the offenses was legally insufficient. Failing that, he seeks a new trial on the ground that the trial court erred in certain evidentiary rulings, including the admission of evidence of defendant's participation in a prior aggravated robbery, and also erred in communicating with the jury in open court in defendant's absence. Finally, even if his convictions are affirmed, defendant seeks a reduction in his consecutive sentence for aggravated robbery from 68 months to 48 months. We affirm.

There is no merit to defendant's contention that the evidence of his guilt was insufficient and that, therefore, his convictions should be reversed outright.

Defendant, Carlos Smith and Shane Pierson rode with John Edmondson from Minneapolis to the area of King's Market, on the northwest corner of Selby and Milton in St. Paul. Marcus Jackson and the robbery victim, Raymond Barnett, lived a block north of the store, at the northeast corner of Dayton and Milton. As they left the store and headed for home, Jackson talked briefly with the driver, Edmondson, whom he knew. Jackson also recognized Smith and Pierson, but not defendant. As Jackson and Barnett approached and were about to enter their home, they were approached on foot by Smith, Pierson and defendant. Jackson went in the house but Barnett remained outside. Smith approached Barnett from behind, put a gun to his head and ordered him to the ground. When Barnett turned, Smith hit him in the head with the gun, knocking him to the ground. Barnett felt someone going through his pockets and heard one of them, he thought defendant, scream, "Shoot him." He also believed defendant hit him on the head with his fist. After taking Barnett's pager and shoes and ripping off his pants, the men walked down Milton toward the store, "cheering, whistling, yelling loud" as they did so.

Dural Woods, the murder victim, was standing outside the store when the three

men arrived there. The three men approached Woods, one of them said "jack move" (which is a street name for robbery), and they grabbed Woods. Woods resisted, saying "Get off of me." Smith then shot Woods in the head. After Woods fell, Smith shot him several more times. Woods, who died, sustained two gunshot wounds to the head, one in the neck area and one in the abdomen. After attacking Woods, the three men, still whooping it up as if their team had just scored a touchdown, jumped in the car driven by Edmondson and sped off.

Shortly after hearing a "shots fired" call on the police radio, St. Paul police officers spotted the car on Lexington Avenue headed onto westbound I–94. The officers followed the car toward Minneapolis and lawfully stopped it in Minneapolis after observing it speed and twice cross the highway lanes from the left side almost all the way over to the right shoulder. Police did not find the gun, which apparently was abandoned somewhere between the scene of the killing and the scene of the arrest, but did find evidence in the car connecting the men to the robbery of Barnett.

Defendant testified in his own defense, claiming that it was Edmondson, not defendant, who was with Smith and Pierson during the robbery of Barnett and during the attack on Woods that resulted in the murder of Woods. Defendant claimed specifically that he was in an alley answering a call of nature when the men robbed Barnett and that he was passively waiting at the corner of Selby and Milton when the other three men arrived at the King's Market corner and attacked Woods.

■ A number of state's witnesses, however, identified defendant as a participant in both the robbery of Barnett and the murder of Woods. Barnett himself identified defendant and testified that he believed it was defendant who urged Smith to shoot him.

Peter Hajjar, who lived across the street from Barnett and who had observed the robbery from a second floor window, identified defendant at the scene of the arrest. He also testified that he watched the three men as they walked toward the store and saw the three men attack and shoot Woods, then run away cheering and yelling. Dennis Presley and Michael Kirkwood, both eyewitnesses to the murder, also identified defendant as being one of the three men who participated in the murder.[1]

Considering all of the evidence in the light most favorable to the verdicts, we have no hesitancy in concluding that there was sufficient evidence for the jury to conclude beyond any reasonable doubt that defendant intentionally participated in both crimes. Therefore, defendant is not entitled to an outright reversal of his convictions.

Defendant bases his alternative claim for a new trial on a number of alleged trial errors, including error in the admission of other-crime evidence under Minn.R.Evid. 404(b) and violation of defendant's right to be present at all stages of the trial.

■ The other-crime evidence admitted by the trial court pursuant to Minn.R.Evid. 404(b) was evidence that a little over two weeks before the current offenses defendant actively participated with others in an aggravated robbery of another man in Minneapolis. There is no need for us to address in any detail the general issue of the admission of other-crime evidence pursuant to Rule 404(b). We have done so in a number of recent decisions, including *State v. Bolte*, 530 N.W.2d 191 (Minn.1995); *State v. Wermerskirchen*, 497 N.W.2d 235 (Minn.1993); and *State v. Frisinger*, 484 N.W.2d 27 (Minn. 1992). Here defendant clearly was present at the scene of the crimes. The issue is not whether defendant was present but whether he was an intentional participant or an unwit-

1. Defendant contends that the trial court improperly sustained an objection to a question whether Kirkwood, who pleaded guilty to a felony charge in connection with a totally unrelated offense, would receive any benefit from the sentencing judge for having testified against defendant. Any response by the witness, an assistant prosecutor, would have been speculative. In our view, it

was sufficient that the jury was informed that the prosecutor would inform Kirkwood's sentencing judge of his cooperation. The jury was free to take that into account in assessing Kirkwood's credibility, but was not required to reject Kirkwood's testimony. *State v. Poganski*, 257 N.W.2d 578, 581 (Minn.1977).

ting, passive nonparticipant. The evidence that defendant intentionally participated in a somewhat similar armed robbery just a little over two weeks earlier was highly relevant evidence tending to rebut defendant's claim that he was innocently involved and that the eyewitnesses were mistaken in identifying him as one of the active participants.

■ Defendant complains further about the trial court's admission of testimony by a police officer that he had talked with defendant the week of March 27, 1994, shortly before trial began, and that there were noticeable differences between how defendant appeared during that meeting and how he appeared at trial. Defendant argues that the state presented this evidence to create the impression that he changed his appearance to frustrate any efforts to identify him and contends the testimony should have been excluded for discovery violations of Minn. R.Crim.P. 7.01 and 9.01, subd. 1(2), (3). We see no point in addressing these arguments because the officer's testimony concerning defendant's changed appearance was cumulative to the other extensive and properly admitted evidence concerning defendant's changed appearance. In view of the overwhelming evidence of defendant's guilt, there is no reasonable possibility that any error in admitting the officer's testimony prejudiced defendant.

Defendant also complains about the trial court's exclusion of testimony that a defense investigator was currently employed as a law clerk for a trial judge in an outstate county. The trial court excluded as irrelevant the reference to the current employment of the witness. We believe the trial court's ruling is sustainable pursuant to Minn.R.Evid. 401–403.

■ Defendant points next to the admission of testimony by one of the officers who followed the getaway car that he suspected someone threw something out of the car at a certain point. The testimony was not admitted as expert opinion testimony by the officer but rather was merely offered as a nonexpert opinion or inference drawn from his observations. *See* Minn.R.Evid. 701. The trial court did not abuse its discretion in admitting the evidence.

■ Finally, defendant claims that the trial court erred by responding to several jury questions in open court in the presence of the attorneys but in defendant's absence. Defendant argues that this violated his right to be present. Since the record does not include any waiver by defendant, we agree that there was a violation of defendant's right to be present. *State v. Ware*, 498 N.W.2d 454, 457 (Minn.1993). However, the error clearly was harmless beyond a reasonable doubt because the trial court's answers were neutral and nonsubstantive and could not have played a significant role in the verdict. *Id.* at 458; *see also United States v. Reynolds*, 489 F.2d 4, 7–8 (6th Cir.1973), *cert. denied*, 416 U.S. 988, 94 S.Ct. 2395, 40 L.Ed.2d 766 (1974).

In summary, the trial court committed no prejudicial error; therefore, defendant is not entitled to a new trial on any of the grounds advanced.

■ Defendant's final contention is that the trial court erred in imposing a 68–month sentence for the aggravated robbery, 20 months more than the presumptive sentence for the offense by one with defendant's criminal history score. We find no error. The offense was not a typical aggravated robbery but was one in which there was gratuitous violence and a gratuitous directive (fortunately not followed) by one of the participants (apparently defendant) to shoot the victim.

In summary, defendant received a fair trial and was properly convicted of and sentenced for both first-degree murder and aggravated robbery.

Affirmed.