**STATE of Minnesota, Respondent,**

v.

**Lennell Maurice MARTIN, Appellant.**

**No. A04–279.**

Supreme Court of Minnesota.

Nov. 16, 2006.

Rehearing Denied Dec. 27, 2006.

**616**

John Stuart, Minnesota State Public Defender, Lydia Villalva Lijo, State Public Defender's Office, Minneapolis, MN, for Appellant.

Mike Hatch, State Attorney General, St. Paul, MN, Robert M.A. Johnson, Marcy S. Crain, Anoka County Attorneys, Anoka, MN, for Respondent.

## OPINION

GILDEA, Justice.

This case is before us following a remand for reconstruction of the record regarding communications between the judge and the jury. An Anoka County jury found Lennell Maurice Martin guilty of first-degree premeditated murder, first-degree murder while committing a burglary, second-degree assault, and two kidnapping offenses. On direct appeal to this court, one of Martin's arguments was that the district court committed reversible error by communicating four times with the deliberating jury outside his presence. The district court record as transmitted to this court contained no information about the substance of the four communications. We affirmed Martin's conviction in part, but also retained jurisdiction and remanded to the district court to make a record of the communications. *State v. Martin,* 695 N.W.2d 578, 587 (Minn.2005).[1] We have now received that record and we affirm.

In the file originally sent to this court for Martin's direct appeal, the only record of any communications between the deliberating jury and court personnel consisted of certain notations made by the in-court

---

**1.** We provided a full recounting of the facts of the murder in our first opinion. *See Martin,* 695 N.W.2d at 581–82.

deputy, Della Davidson, identified as "Anoka County District Court Minutes of Criminal Proceedings." Many of these notations indicate routine, non-prejudicial communications between the jury and deputy—such as requests for smoke breaks and meals.[2] In Martin's initial appeal, however, he argued "that the trial court erred by failing to have him present when the court responded to [four] jury questions and by failing to secure his waiver of the right to be present." *Id.* The minutes note the date and time of the four jury questions with which Martin took issue but do not describe either the questions asked by the jury or the responses given by the judge.

In remanding, we stated:

Our review of the record leaves us with some doubt as to whether the four communications at issue relate to housekeeping matters or substantive matters. Because there is some doubt about the nature of the communications, we remand to the trial court to make a record of the four communications at issue, so that we may make an informed decision regarding the matter.

*Id.* at 587. Two evidentiary hearings were conducted, the transcripts of which have been transmitted to this court.

The evidence gathered during the remand proceedings provides the following information about the four communications:

(1) On October 28, 2003, at 5:29 p.m., the jury asked a question which the judge answered at 5:30 p.m. The written content of this communication was not located, but Davidson testified that the "question was to the Judge indicating or questioning what time [the jury] would have to leave for the hotel." The deputy also recalled that the judge responded to this question at 5:30 p.m. telling the jury they would leave for the hotel at 8:00 p.m.

(2) On October 28, at 8:18 p.m., the jury asked a question which the judge answered at 8:21 p.m. The written content of this communication was not located and neither the deputy nor the trial judge could recall the content.

(3) On October 29, at 9:58 a.m., the jury submitted a note to the judge asking "Can we have a dictionary? If so give us one." The judge's response, written on the note, is "No," followed by "Judge Olson 10:04 10/29/03[.]"

(4) On October 29 at 10:08 a.m., the jury submitted a note to the judge asking "Does [the] rule of law define rash impulse? What is it?" The response, again written on the note, is, "You have the law the Judge has given you. That is the only law that applies to this case[.] Judge Olson 10:10 am 10/29/03[.]"

At the first hearing on remand, conducted on August 19, 2005, deputy Davidson

2. Davidson testified that she had written the minutes documenting the interactions between court personnel and the jury. She explained that under established protocols, the jury would write down its question and knock on the jury room door, Davidson would take the question and get an answer from the judge, and then Davidson would read the note and hand it back to the jury. If the judge was not in chambers when the jury asked a question, Davidson would contact the judge by phone, write the answer on the jury's note, and then return it to the jury. As set forth below, notes do not exist for two of the communications at issue. Davidson did not have an explanation for the absence of written evidence (notes) for those two questions. She testified that the questions would definitely have been written by the jury, but may have been misfiled or lost—either because a juror carried them away or threw them away after the first day of deliberations. Davidson said she cleaned up the jury room and secured the notes at the conclusion of the trial but probably did not search the wastebasket in the jury room.

and presiding Judge Lynn Olson (now retired) testified as to their recollections regarding communications between the judge and the jury. Judge Olson also testified regarding the agreement she reached with counsel about how questions from the jury would be handled.

After excusing the jury to begin deliberations in Martin's trial, the district court discussed with the parties' attorneys and in Martin's presence the "typical questions" or requests the jury might make as it deliberated. The purpose of the discussion, Judge Olson said, was to "get your assent that I don't need to contact you first before answering them." The judge said she would grant a request for equipment to watch the video tape of the crime scene that was admitted at trial, but would deny a request to review testimony. She also said she would deny a request for definitions, unless the question presented was "[c]omplicated * * * even if it's pretty minor but still complicated, I would feel a need to talk with both of you, but I wouldn't necessarily need to have you come in, if that's okay with you." Counsel for the state and for Martin agreed, without discussion or modification, to the judge's proposal.

■ In the agreement initiated by the district court, the court also stated that "the only time I would really want you actually here, with Mr. Martin here, is if there's something of real substance that they ask about that I feel I just * * *

[s]houldn't do alone." Martin's counsel replied, "sure" before the court had finished and "that's fine" when the court had finished. The court then asked, "Is that okay with everybody?" Martin's counsel replied, "Fine with me, Judge." The court's language indicates that the parties understood the court would have broad discretion in determining whether a question fell within the scope of the agreement. Martin has conceded as much, stating: "This agreement * * * gave the judge unchecked discretion to determine what constituted 'something of real substance' * * *." [3]

On remand, Judge Olson testified that she believed that she followed the agreement every time there was a question and an answer between her and the jury. She also testified that in the absence of an agreement, she would have brought the attorneys "back [for] every question." Finally, she explained during her testimony that if the jury had asked a question that was outside the terms of the agreement, she would have called the attorneys.

After our receipt of the transcript from the first remand hearing and the parties' supplemental briefs, we remanded for a *Schwartz*[4] hearing so jurors could be examined regarding the communications. At the *Schwartz* hearing, conducted March 30, 2006, the twelve jurors from Martin's trial testified.

In the second remand, we also ordered findings of fact from the district court.

---

3. The dissent argues that "the terms of this agreement run contrary to well-settled law in Minnesota that a judge is absolutely prohibited from communicating with a deliberating jury outside of the defendant's presence[,]" and that the only exception to the rule is "if the communication relates to mere pleasantries or issues of jury comfort." Aside from the "housekeeping" exception recognized in *Ford v. State*, 690 N.W.2d 706, 713 (Minn. 2005), however, we have also recognized that a defendant can "consent" to communica-

tions outside his presence and suggested that communications with the defendant's consent would not be erroneous. *See State v. Sessions*, 621 N.W.2d 751, 755 (Minn.2001). The issue of consent is the precise question presented in this case.

4. *See Schwartz v. Minneapolis Suburban Bus. Co.*, 258 Minn. 325, 104 N.W.2d 301 (1960); *see also* Minn. R.Crim. P. 26.03, subd. 19(6).

Because Judge Olson had retired, the remand proceedings were conducted before Judge Thomas Hayes. Judge Hayes found that "[n]o juror has a concrete recollection of the specific communications occurring at 5:29 p.m. and 8:18 p.m. of the first day of deliberation." He also found that "[s]pecific recollections regarding communications between the jury and the trial court were generally confined to the five notes preserved in *Schwartz* hearing Exhibit 2." The reference to five notes includes the dictionary and "rash impulse" notes plus the following notes: the jury's request at 8:00 p.m. on October 28 requesting an additional half hour to deliberate, the jury's request on October 29 at 9:37 a.m. for a VCR, and the jury's note at 3:10 p.m. on October 29 stating that it had reached a verdict.[5] Judge Hayes also found that "[n]o person entered the deliberation room during the jury's deliberation," and that "[a]ll questions submitted by the deliberating jury were submitted to the trial court in writing."

## I.

■ We first address whether the district court committed reversible error when it communicated with the deliberating jury outside of Martin's presence. A defendant in a criminal proceeding has a Fourteenth Amendment due process "right to be present at all critical stages of trial." *Ford v. State*, 690 N.W.2d 706, 712

(Minn.2005). Minnesota's criminal rules state that the defendant shall be present "at every stage of the trial." Minn. R.Crim. P. 26.03, subd. 1(1). We have previously determined that a district court erred when it communicated with a jury on a substantive matter outside the defendant's presence without the defendant's consent. *State v. Sessions*, 621 N.W.2d 751, 753 (Minn.2001) ("We hold that the trial court erred by engaging in substantive communications with a deliberating jury outside of open court, without the appellant's knowledge, consent or presence, and without the presence of appellant's counsel and the prosecutor * * *.").[6]

■ It is clear, however, that "[l]ike any constitutional right, the right to be present at trial may be waived by the accused." *State v. Cassidy*, 567 N.W.2d 707, 709 (Minn.1997). Although a "defendant can waive his right to be present at a stage of trial, the decision to waive the right is 'not for counsel to make but a personal decision for defendant to make after consultation with counsel.'" *Martin*, 695 N.W.2d at 586 (quoting *State v. Ware*, 498 N.W.2d 454, 457 (Minn.1993)). While it is plainly the preferred practice, we have not required, either in our original opinion in the instant case or in any other opinion, a defendant to explicitly affirm to the district court his personal waiver of his right to be present. *See id.* (listing the parties' arguments regarding whether Martin had

---

**5.** The last three notes are not before us. As set forth below, Martin waived the right to appellate review of a claim based on the VCR note, and Martin makes no claim based on either the note sent at 8:00 p.m. on October 28 or the note sent at 3:10 p.m. on October 29. *See Martin*, 695 N.W.2d at 586 (noting Martin's concession "that ten of the fourteen contacts [from the jury] concerned housekeeping matters").

**6.** We have also determined "that when a judge communicates in writing with the jury

about a housekeeping matter, the defendant's right to be present at trial is not violated." *Ford*, 690 N.W.2d at 713. In *Ford*, this court did not define housekeeping matters, but referred to matters " 'relating to physical comforts [of the jury] and the like' " in reaching its decision. *Id.* (citing *State v. Kelley*, 517 N.W.2d 905, 908 (Minn.1994)); *see also State v. Greer*, 635 N.W.2d 82, 93 n. 3 (Minn.2001) (distinguishing "communications relating to aspects of a pending case from nonsubstantive contacts and mere pleasantries").

waived his right to be present, but ultimately not deciding the question); *cf. State v. Osborne*, 715 N.W.2d 436, 442 (Minn.2006) ("When it comes to the waiver of at least two fundamental rights, the right to a jury trial and the right to counsel, our law is clear that these rights cannot be waived by silence.").[7]

Rather than requiring an explicit waiver, we have said with respect to the defendant's right to be present that "the fact that a personal waiver does not appear of record on appeal does not mean that there was no waiver." *State v. Ware*, 498 N.W.2d 454, 457 (Minn.1993). We have also determined that "a detailed on-the-record colloquy between the defendant and the trial court" is not necessary to show that a defendant has waived his right to be present for a portion of the trial. *See State v. Worthy*, 583 N.W.2d 270, 276 (Minn.1998).

■ Martin asserts that "he did not personally waive his right to be present for this critical stage of the trial." The state argues that the communications at issue fell within the scope of the agreement made between the district court and Martin's counsel, and that the agreement was made in Martin's presence. This court "review[s] a decision to proceed with trial [with the defendant absent] under an abuse-of-discretion standard, and [this court] will not disturb the trial court's factual findings unless clearly erroneous." *Cassidy*, 567 N.W.2d at 709–10.

■ Where, as in this case, a defendant claims that he did not waive his right to be present, "[c]learly, a defendant bears the burden of showing that his or her absence from trial was involuntary. That burden is a heavy one to meet, and rightly so." *Cassidy*, 567 N.W.2d at 710. In *Cassidy*, the defendant was out of custody during his trial, which was scheduled to last two days and was conducted in northern Minnesota. *Id.* at 708. At the end of the first day of trial, the defendant returned to his home in Canada, and because of an unrelated emergency involving the owner of the vehicle he was supposed to use to return, he was unable to secure transportation back to court for the continuation of his trial. *Id.* at 708–09. The defendant telephoned the court, explained his situation and stated "for the record I want to be there for the whole trial." *Id.* at 709. Notwithstanding this evidence, the court ordered that the trial should continue in the defendant's absence. We reversed, holding that the court abused its discretion. *Id.* at 710–11.

---

7. The dissent points to *Osborne* and argues that we should not imply Martin's waiver of his right to be present during proceedings involving communications with the jury. We note, however, that our rules require explicit on-the-record waivers by the defendant for the rights discussed in *Osborne*: the right to jury trial and the right to counsel. *See* Minn. R.Crim. P. 26.01, subd. 1(2) (jury trial) and Minn. R.Crim. P. 5.02, subd. 1(3) and (4) (counsel). The rule relating to the defendant's presence at trial, by contrast, contains no such requirement. *See* Minn. R.Crim. P. 26.03, subd. 1. In addition, while "we have never applied forfeiture or waiver by silence" to the right to jury trial or the right to counsel, *Osborne*, 715 N.W.2d at 443, we have recognized that the right to be present can be forfeited. *See State v. Thompson*, 430 N.W.2d 151, 152 (Minn.1988) ("Since the defendant's attorney did not request that defendant be allowed to be present or object to defendant's absence, the court of appeals should have held simply that the issue was forfeited."). Finally, we note that we specifically did not require an on-the-record waiver in *State v. Hannon*, 703 N.W.2d 498, 506 (Minn.2005), which addressed the issue of the defendant's right to be present at all stages of his trial. Instead, as more fully discussed below, because the defendant failed to object at trial to a proceeding that was held in his absence, we found that he waived his right to be present at this portion of his trial. *Id.* In short, neither our court rules nor our precedent dictate that we adhere to the dissent's standard.

■ In contrast to *Cassidy*, Martin provided no evidence that he wanted to be present if the district court received questions from the jury. There is no dispute that the court made an agreement with counsel regarding how to handle certain types of questions from the jury and that under the terms of that agreement Martin would not be present. There likewise is no dispute that this agreement was made in Martin's presence, and there is no evidence that Martin objected in any way to the agreement. It is certainly true that the court should have secured Martin's on-the-record acceptance of the agreement. But, in the context of a defendant's right to be present at trial, we have specifically found a waiver even though it was not expressed on the record. *See Hannon*, 703 N.W.2d at 506. In *Hannon*, the district court halted the testimony of a defense witness "after the witness twice disobeyed the district court's instruction." *Id.* The court conducted an off-the-record interview with the witness in chambers in the presence of counsel. *Id.* A summary of this interview was prepared and the summary was presented to the jury in lieu of further live testimony from the witness. *Id.* at 504. On appeal, the defendant claimed that his right to be present at trial was violated because he was not present during the chambers conference where the summary of the testimony was prepared. *Id.* at 506. We held that the defendant waived his right to be present because

neither the defendant "nor his attorney objected to the creation or use of the summary nor was any objection raised at trial to [the defendant's] exclusion from the conference." *Id.* Because of the failure to object, we concluded that the defendant "waived any right he had to attend the conference." *Id.*

In other contexts, beyond the right to be present at trial, we have also construed a defendant's failure to object as the defendant's acquiescence. *See State v. Blom*, 682 N.W.2d 578, 617 (Minn.2004) (concluding that "[a] court may imply a waiver from a defendant's conduct"); *State v. Provost*, 490 N.W.2d 93, 97 (Minn.1992) (construing defendant's failure to object as acquiescence to his counsel's concession that defendant was guilty of a lesser charge and rejecting defendant's argument "that there must be a 'contemporaneous' record made of the defendant's consent to his counsel's strategy of admitting guilt to a lesser charge"); *State v. Smith*, 299 N.W.2d 504, 506 (Minn.1980) ("Without anything in the record suggesting otherwise, we must presume that the decision not to testify was made by defendant voluntarily and intelligently."). We reach the same conclusion here, and hold that the district court did not abuse its discretion in concluding that Martin waived his right to be present for communications with the jury that fell within the scope of the agreement.[8]

---

8. The dissent contends that the result reached here conflicts with *Ware* and *Worthy*, but, as discussed *supra*, in both *Ware* and *Worthy* we specifically noted that the absence of a personal, on-the-record waiver was not dispositive of the issue. *Ware*, 498 N.W.2d at 457; *Worthy*, 583 N.W.2d at 276. *Worthy* also supports our conclusion that the burden is properly placed on Martin to show that he did not waive his right to be present. *Worthy*, 583 N.W.2d at 277. *Brown v. State*, 682 N.W.2d 162 (Minn.2004), also cited by the dissent, does not lead to a different conclusion. We

reversed and remanded for a new trial in *Brown* because, contrary to the rule in *State v. Mims*, 306 Minn. 159, 169, 235 N.W.2d 381, 388 (1975), "the judge improperly entered the jury room after deliberations had begun." 682 N.W.2d at 167–68. There is no such contention in this case. Moreover, Martin's presence when the agreement was made makes this case factually distinguishable from the situation in *Brown*, where it is not clear from our opinion whether counsel's waiver of the right to be present was made in Brown's

## II.

We next examine whether the four disputed communications fell within the scope of the agreement. We first examine the two communications that are reflected in notes (the request for a dictionary and the "rash impulse" question) and then turn to the two communications for which notes were not located (the communication at 5:29 p.m. on October 28 and the communication at 8:18 p.m. on October 28).

### The Dictionary request

■ According to the deputy's minutes, at 9:58 a.m. on October 29, 2003, the jury knocked with a question. The judge was called two minutes later and an answer was provided to the jury at 10:04 a.m. At the first remand hearing, the following note was admitted into evidence as Exhibit 3: "Can we have a dictionary? If so give us one." The response, written on the note, is "No," followed by "Judge Olson 10:04 10/29/03[.]"

Judge Olson testified at the first remand hearing that this was "the kind of question that juries often ask when they want to be supplemented. And clearly they can't be supplemented." Judge Olson did not consider calling the parties about the dictionary request because she thought she was "not allowed to give" the jury a dictionary and "thought this was one of those kinds of questions [the court and the parties] had already discussed." As the agreement did encompass denying the jury "[d]efinitions that have to do with the jury instructions, have to do with the law," and Judge Olson appears to have reasonably understood the agreement to also encompass denying the jury's request for materials not in evidence, we conclude that the request for a

dictionary fell within the scope of the agreement and therefore the district court did not commit reversible error in communicating with the jury regarding the dictionary request.

### Rash impulse question

■ Four minutes after the jury was told that it could not have a dictionary, the jury again knocked with a question. Judge Olson was called a minute later and at 10:10 a.m. an answer was given to the jury. At the first remand hearing, the following note was admitted into evidence as Exhibit 4: "Does [the] rule of law define rash impulse? What is it?" The response, again written on the note, is, "You have the law the Judge has given you. That is the only law that applies to this case[.] Judge Olson 10:10 am 10/29/03[.]"

In testimony at the first remand hearing, Judge Olson agreed that the jury was "essentially asking for a definition" of "rash impulse" in the questions on Exhibit 4. Judge Olson said that "I couldn't possibly give [the jury] anymore [sic] answer than I did give them" with regard to the rash impulse question. She did not consider contacting the parties "because we discussed it ahead of time" and the parties had "been in complete agreement that with the obvious sorts of questions wanting more information, that I [Judge Olson] couldn't give it to [the jury]."

■ Exhibit 4 indicates that the jury wanted to know the definition of rash impulse. In reading the instructions to the jury immediately prior to the start of deliberations, the district court said: "A premeditated decision to kill may be reached in a short period of time. However, an

---

presence. Finally, the dissent's reliance on *Johnson v. Zerbst*, 304 U.S. 458, 465, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), is misplaced. Those

cases address waivers of the defendant's right to counsel and of his right to jury trial. As explained *supra*, note 7, the standard for waiving the rights at issue in those cases is not applicable here.

unconsidered or rash impulse, even though it includes an intent to kill, is not premeditated." The agreement regarding communications between the court and the jury encompassed the court denying the jury "[d]efinitions that have to do with the jury instructions, have to do with the law." The communication of Exhibit 4 fell within the agreement, and therefore the court did not commit reversible error in communicating with the jury regarding the rash impulse question.[9]

*October 28 question at 5:29 p.m.*

■ There is no written contemporaneous record of this communication. The deputy recalled on remand, however, that this communication related to the time the jury would leave for the hotel. There is no other credible evidence in the record that this communication involved anything other than a housekeeping matter. Based on the deputy's description of this communication, we conclude that it fell within the terms of the agreement. The district court framed the agreement as requiring it to call the parties back only "if there's something of real substance that they ask about that I feel I just * * * shouldn't do alone." Both sides agreed with this arrangement. The question regarding how long the jury would continue deliberating cannot by any definition be viewed as a question of "real substance" and we hold that the court did not commit reversible error in concluding that the question fell within the scope of the agreement and in handling this question as it did.

*October 28 question at 8:18 p.m.*

The reconstructed record contains little information about this communication, and, as a result, Martin asks us to presume prejudice and award him a new trial. We have said, however, that we generally do not "presum[e] prejudice" merely because of a defect in the proceedings. *State v. Dame,* 670 N.W.2d 261, 266 (Minn.2003) (holding that the district court's decision to delay jury instructions and deliberations did not warrant a presumption of prejudice). In another case where we addressed "private communications or contact" with deliberating jurors, we said that "a new trial will be ordered only upon a showing of prejudice by the appellant." *State v. Erickson,* 597 N.W.2d 897, 901–02 (Minn.1999). We also said in *Erickson* that "[p]rejudice will be presumed" if the

---

9. As discussed above, the jury also asked for a VCR. At the first remand hearing, the following note was admitted into evidence as Exhibit 2: "We need to watch video tape Item # 53 please provide VCR." The note also included "9:37 10/29/03." A clerk called "Judge Olson to get OK for VCR," and at 9:42 a.m. a "TV and VCR [were] given to jury." Martin did not contest this communication in his initial appeal to this court, and we determined that Martin had conceded that the VCR request was one of ten contacts evidenced by the minutes that "concerned housekeeping matters." *Martin,* 695 N.W.2d at 586. Martin now claims error related to the VCR request. In *State v. Greer,* this court held that "when a case returns to an appellate court after remand, the matters raised and resolved in the original appeal that resulted in the remand, and any claims that were known but not raised in the original appeal, will not be considered." 662 N.W.2d 121, 125 (Minn.2003). Because this court's original remand to the district court was limited to "mak[ing] a record of the four communications at issue," Martin's claim of error regarding the VCR is deemed waived. We additionally note that the VCR communication clearly fell within the bounds of the agreement. The district court told the parties that the jury would "want perhaps to look at the video." If the jury did, the district court told the parties that it would have the TV and VCR moved into the jury deliberation room. The court then said: "Anything like that, I'm presuming that you don't really need to be involved in that decision making." Martin's counsel stated: "I don't need to be * * * involved in that, Judge." Thus, the court did not commit reversible error in providing a VCR to the jury.

defendant provides evidence "showing * * * private communications or contact or other circumstances suggesting direct or indirect improper influence or jury tampering * * *." *Id.* at 902.[10] We concluded that if the defendant makes this showing, then the burden shifts to the state to overcome the presumption. *Id.*

At issue in *Erickson* was whether the district court committed reversible error in allowing a deliberating jury to separate overnight without first securing the defendant's consent. *Id.* at 901. We held that the district court had, contrary to our rule, allowed the jury to separate without the defendant's consent. *Id.* at 902. Yet, we did not presume prejudice and order a new trial based on the rule violation. *Id.*[11]

The concern underlying the jury sequestration rule at issue in *Erickson* was to avoid the potential for "outside influences" on a deliberating jury. *Id.* at 902. This case does not involve jury sequestration. But Martin's claim that his right to be present during proceedings involving jury questions implicates the same concern—guarding the sanctity of the deliberating jury—we addressed in *Erickson.* *See also Sessions,* 621 N.W.2d at 756 (noting that requirement in Minn. R.Crim. P. 26.03, subd. 19, that jury questions be handled in open court, is "mandatory" because "[t]he public interest requires that parties to lawsuits or defendants on trial should have

nothing to complain of or suspect in the administration of justice." (quotation omitted)). Accordingly, we conclude that *Erickson* provides the appropriate framework for our analysis.[12]

■ We emphasize that the rule applied in *Erickson* does not require that Martin *prove* that the communications *were harmful.* Rather, *Erickson* requires only that appellants come forward with evidence "suggesting" that there was "improper influence." 597 N.W.2d at 902. As we concluded above, Martin implicitly waived his right to be present for any communications that fell within the scope of the agreement reached in his presence. Thus, for purposes of this case, Martin could be found to have met his burden under the *Erickson* framework if there was some evidence suggesting contact with the jury outside the scope of the agreement. If Martin had met that burden of showing such a contact, a presumption of prejudice would arise and the burden would shift to the state to overcome the presumption of prejudice. *Id.* The reconstructed record (based on two separate evidentiary hearings) leads us to conclude that Martin has not met his burden of producing evidence suggesting that there was a contact with the jury that fell outside the scope of the agreement such that

---

**10.** For example, we have recognized that "[s]tatements of a court official about the merits of a criminal case raise a rebuttable presumption of prejudice." *State v. Cox,* 322 N.W.2d 555, 558 (Minn.1982).

**11.** In *Erickson,* "because of the existence of several other serious errors" in addition to the error in allowing the jury to separate, we remanded the case for a *Schwartz* hearing, just as we did here. 597 N.W.2d at 902, 904. After remand, we affirmed the conviction. *State v. Erickson,* 610 N.W.2d 335 (2000).

**12.** If we were to look outside Minnesota, as the dissent suggests we should, we would find that the highest courts from other states appear to be split on the issue of whether prejudice is presumed in circumstances where, as here, the record is silent as to the substance of the communication by the court. *Compare Tarry v. State,* 289 Ark. 193, 710 S.W.2d 202, 205 (1986) (presuming prejudice), *with Marsillett v. State,* 495 N.E.2d 699, 709 (Ind.1986) (noting that defendant "carries the burden to present the substance of the communication on appeal" and that if that burden is carried, a rebuttable presumption arises).

he would be entitled to a presumption of prejudice.[13]

We reach this conclusion for several reasons. First, Judge Olson did not personally talk to the jurors or enter the jury room while the jury was deliberating. *Cf. Brown*, 682 N.W.2d at 167–68 (holding that the judge's entry into the jury room constituted reversible error). Second, the minutes indicate that the judge's response to the jury's 8:18 p.m. question was delivered in three minutes. While Judge Olson could not recall the substance of the 8:18 p.m. communication, she testified that it was probably not a difficult or substantial question because she answered it so quickly. She testified that she believed she handled all of the jurors' questions in accord with the agreement and indicated that "[i]f it were a question of substance, [she] would have had to call the attorneys." Judge Olson also explained that "[i]f there were any question in her mind as to whether or not it was a question of substance," she would have called the attorneys.[14] Third, and perhaps most important, all twelve jurors were asked about

substantive communications. As the district court found on remand, no juror could recall *any* substantive type of question being asked of the court, other than the communications that were the subject of the contemporaneous notes (i.e., the dictionary question, the rash impulse question, the VCR question).

On this reconstructed record, where we have the sworn testimony of the trial judge, the testimony of all 12 jurors and the findings of fact from the district court on remand, we hold that Martin has not met his burden of producing evidence suggesting that this communication fell outside the scope of the agreement. We therefore hold that the district court did not violate Martin's right to be present at all stages of trial when the court communicated with the jury outside of his presence.

### III.

 It is important to note that we do not intend to condone the practice the district court used here. The better practice, and the practice we expect, is for the court to convene counsel and the defen-

---

**13.** The dissent concludes that Martin "has sufficiently sustained his burden to show that impermissible communications occurred," and that a "presumption of irregularity" must attach. We disagree. In the absence of the agreement between the district court and the parties, there might be room for a finding that Martin had carried his burden of showing an improper contact. *Cf. Ford*, 690 N.W.2d at 713 (noting that any "doubt regarding whether a communication relates to a housekeeping or substantive matter should be resolved in favor of defendant's presence," and that substantive communications require " 'notice to all parties and reasonable opportunity for them to be present'" (quoting *Kelley*, 517 N.W.2d at 908)). But when an agreement exists where the defendant has waived his right to be present, and the reconstructed record does not include even the slightest indication that the communication at issue fell outside the scope of the defendant's con-

sent, we cannot conclude that Martin has met his burden of production.

**14.** The dissent suggests that we should have "considerable doubt" about Judge Olson's testimony that the 8:18 p.m. question was not substantive because Judge Olson also described the VCR request, the dictionary request and the rash impulse question as not substantive. The issue, however, is not simply whether the questions were substantive, but whether they were the types of questions covered by the agreement between the district court and the parties. The agreement specifically authorized Judge Olson to respond to these three questions in the manner she did. As Judge Olson explained, all three of these questions were things she had specifically discussed with counsel, and counsel agreed (in Martin's presence) to how Judge Olson answered these questions. As shown above, our review of the reconstructed record confirms the accuracy of Judge Olson's recollection.

dant in the courtroom and make a contemporaneous record of all communications with the jury, both those that are housekeeping and those that are not, so that the record for appeal is clear. *See Sessions*, 621 N.W.2d at 756 ("We caution district courts to make a contemporaneous record of each stage of trial, particularly a stage as delicate as communications with the jury and with counsel during deliberations."). That did not happen in this case, and so we (and the district court and the parties) were faced with the challenge of reconstructing the record some two years after the trial in this matter and over a year after the trial judge had retired. That reconstructed record contains the sworn testimony of the trial judge who confirmed that all of the questions she received from the deliberating jury were handled in accordance with the agreement that was made in the defendant's presence. Plainly the district court should have done a better job, but we are mindful that "[n]ot every judicial error automatically requires reversal." *State v. Shoen*, 598 N.W.2d 370, 375 (Minn.1999). In this case, the evidence of Martin's guilt was strong, including eyewitness testimony and DNA evidence. *See Martin*, 695 N.W.2d at 581–82 (discussing evidence). Because "the constitutional guarantee of a fair trial does not insure the accused of a trial which is perfect in every detail," we have said that "[t]he granting of a new trial in criminal cases is done cautiously, and a conviction will not be reversed for mere technical errors where it appears that the accused has not been prejudiced through the impairment of substantial rights essential to a fair trial." *State v. Billington*, 241 Minn. 418, 427, 63 N.W.2d 387, 392–93 (1954); *see also State v. Greenleaf*, 591 N.W.2d 488, 505 (Minn.1999). Our review of the record leaves us with the conclusion that while Martin may not have received a perfect trial, he did receive a fair trial. *See Blom*, 682 N.W.2d at 626.

## IV.

In his supplemental brief, Martin argues that he received ineffective assistance of counsel because of his counsel's consent to the district court's proposed procedures for handling questions from the jury. This basis for claiming ineffective assistance of counsel is different from the five bases Martin claimed in his original appeal. *See Martin*, 695 N.W.2d at 587–88 (discussing Martin's original arguments and preserving the issues for possible postconviction review). In *State v. Greer*, we held that "when a case returns to an appellate court after remand, the matters raised and resolved in the original appeal that resulted in the remand, and any claims that were known but not raised in the original appeal, will not be considered." 662 N.W.2d at 125. Consistent with *Greer*, we hold that this claim of ineffective assistance of counsel is barred during this review.

Martin also raises for the first time in his supplemental brief a claim that "prejudicial irregularities surrounding the communications between the judge and the jury and the failure to maintain and timely provide information about those communications" entitles him to a new trial. In particular, Martin claims he was prejudiced by the judge's alleged absence from the courthouse, by the procedure by which the judge received the jury questions and responded, and by the deputy's reading of the judge's responses to the jury. We hold that this claim is also barred by the rule articulated in *Greer*.

Affirmed.

MEYER, Justice (dissenting).

I respectfully dissent from the majority's conclusion that Lennell Martin waived

his right to be present for some jury communications, and its affirmance of Martin's conviction. I would hold that the facts and law do not support a determination that Martin knowingly, intelligently, and voluntarily relinquished his right to be present, and that the failure of the trial court to make a record of communications with the deliberating jury should result in reversal and remand for a new trial.

The Sixth Amendment Confrontation Clause and the Due Process Clause of the Fourteenth Amendment provide the basis for a criminal defendant's right to be present at trial. *United States v. Gagnon,* 470 U.S. 522, 526, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985). "Through the Confrontation Clause, the Sixth Amendment to the United States Constitution grants a defendant the right to be present at all stages of trial." *State v. Sessions,* 621 N.W.2d 751, 755 (Minn.2001) (citing *Lewis v. United States,* 146 U.S. 370, 374, 13 S.Ct. 136, 36 L.Ed. 1011 (1892)). Minnesota's criminal rules state that the defendant shall be present "at every stage of the trial." Minn. R.Crim. P. 26.03, subd. 1. This court has held that the right to be present is broader under Rule 26.03 than under the Confrontation Clause. *State v. Thompson,* 430 N.W.2d 151, 152–53 (Minn.1988).

Responding to a deliberating jury's question is a stage of trial, requiring the defendant's presence. *Sessions,* 621 N.W.2d at 755. Moreover, the rules explicitly require the defendant's presence if the jury makes a request to review testimony or other evidence or asks to be informed on any point of law. Minn. R.Crim. P. 26.03, subds. 1, 19(2), (3). The jury must be brought into open court, and the prosecutor and defense counsel must be notified. *Id.,* subd. 19(2), (3). We have clearly articulated the reason for requiring the defendant's presence:

Our focus is not on the inconvenience of calling necessary personnel into open court, but on the public interest. "The public interest requires that parties to lawsuits or defendants on trial should have nothing to complain of or suspect in the administration of justice." Where the rules explicitly require proceedings in open court, and, without defendant's consent, those proceedings are not conducted there, the defendant and society generally lose confidence in the integrity of the proceeding.

*Sessions,* 621 N.W.2d at 756 (quoting *State v. Schifsky,* 243 Minn. 533, 543, 69 N.W.2d 89, 96 (1955)).

A failure to respond to a jury communication on a point of law or an evidentiary issue in open court with counsel and the defendant present is a violation of the defendant's constitutional right to be present and a violation of our rules of criminal procedure. *Id.* at 753 ("We hold that the trial court erred by engaging in substantive communications with a deliberating jury outside of open court, without the appellant's knowledge, consent or presence, and without the presence of appellant's counsel and the prosecutor."). In this case, the majority apparently concludes that Martin's constitutional right to be present would have been violated but for the fact that he "waived by his silence" his right to be present during a critical stage of the trial. I would conclude that there was no effective waiver. Martin did not knowingly, intelligently, and voluntarily waive his right to be present during jury communications.

I turn first to the substance of the so-called waiver granted by Martin. After the jury began its deliberations, the judge initiated a discussion with the parties' attorneys, in Martin's presence. The purpose of the discussion was to get an agreement from the attorneys that the judge

need not contact the attorneys with every single question initiated by the jury during deliberations.[1] After some discussion, the court obtained an agreement from the attorneys that the judge would generally be allowed to communicate with the jury without Martin present unless the judge received a question of "real substance."[2] The judge then asked, "Is that okay with everybody?" Counsel for Martin replied, "Fine with me, Judge." Martin was not asked if he understood the nature of the agreement or if he understood that he was waiving an important constitutional right; he simply was present in the courtroom and silent. The majority concludes that because Martin failed to object to the agreement, he acquiesced in it and thereby waived his constitutional right to be present.

The majority's conclusion runs contrary to the general principle that constitutional rights must be waived knowingly, intelligently, and voluntarily, *see Brady v. Unit-*ed States, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) (describing waiver of federally protected constitutional rights), and our specific statement that waiver of the right to be present at a critical stage of trial must be competent and intelligent, *State v. Worthy,* 583 N.W.2d 270, 277 (Minn.1998) (citing *Johnson v. Zerbst,* 304 U.S. 458, 465, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). Again, the right to be present is rooted in the Confrontation Clause, as well as the Due Process Clause, and the U.S. Supreme Court has stated that courts "cannot presume a waiver of * * * important federal rights [including the right to confront one's accusers] from a silent record." *Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

The majority's conclusion is also in direct conflict with our holding in *State v. Ware,* 498 N.W.2d 454 (Minn.1993). In *Ware,* the trial court proceeded with a critical stage of trial (polling of the jury

1. I am troubled by the trial court's preemptory effort to avoid having to call counsel and the defendant into open court to consider questions from the jury. This is a significant deviation from the rules of criminal procedure and this court should not acquiesce in this practice. *See State v. Rean,* 421 N.W.2d 303, 306 (Minn.1988) (indicating that district courts cannot follow a blanket rule in denying requests to review testimony by a jury); *see also State v. Spaulding,* 296 N.W.2d 870, 878 (Minn.1980) (reversing and remanding for a new trial where the trial court refused to exercise its discretion by determining at the outset of deliberations that it would deny any jury requests to review trial transcript). To allow otherwise seriously undermines the rules for conduct of a trial and wrongly broadens the scope of the trial court's discretion. We would never, for example, allow a court to secure, at the outset of trial, the parties' consent to forgo the hearsay rule. I find it particularly troubling that it was the trial court's "usual practice" to employ advance agreements regarding jury communica-tions—especially since Martin was on trial for first-degree murder.

My concerns are heightened by other circumstances surrounding the jury communications. First, the trial court failed to collect the notes sent from the deliberating jury and make them part of the court file. Only after the first remand did the court discover *some* of the notes, and include them in the court file. The bailiff had no explanation for the absence of some notes that would have documented the communications. Second, there is an indication in the record on remand that the judge was absent from the courthouse while the jury was deliberating and that the judge provided responses to at least some of the jury questions over the phone through the bailiff.

2. As discussed below, the terms of this agreement run contrary to well-settled law in Minnesota that a judge is absolutely prohibited from communicating with a deliberating jury outside of the defendant's presence. The only exceptions we have permitted are if the communication relates to mere pleasantries or issues of jury comfort.

after it had returned a verdict) without the defendant present and without the defendant's explicit waiver of his right to be present. *Id.* at 457. We concluded that

> a trial court ought not proceed with the return of the verdict, including the polling of the jury, in the absence of the defendant unless the defendant has waived the right to be present. Moreover, this decision to waive is a decision not for counsel to make but a personal decision for defendant to make after consultation with counsel.

*Id.* The rule is that "[a]lthough [the defendant] could have waived the right to be present, and his counsel purported to do so, we have held that a waiver by counsel is ineffective unless it is made with the informed consent of the defendant." *Brown v. State*, 682 N.W.2d 162, 166 (Minn.2004) (citing *Sessions*, 621 N.W.2d at 756, and *Ware*, 498 N.W.2d at 457). In this case, the record is silent about whether Martin consulted with his counsel about waiving his presence or whether he was given the opportunity to make a personal decision about such a waiver. Importantly, his personal waiver of his right to be present is not on the record.

In *Ware* we made it clear that a decision to waive the right to be present at a critical stage of trial is a "personal decision." 498 N.W.2d at 457. The same conditions for an effective waiver of this personal right should be required as those that are required for other personal constitutional rights. "When it comes to the waiver of at least two fundamental rights, the right to a jury trial and the right to counsel, our law is clear that these rights cannot be waived by silence." *State v.*

*Osborne*, 715 N.W.2d 436, 442 (Minn. 2006).[3] Those requirements include a personal waiver upon the record in open court, after being advised by the court of the right to be present and after having an opportunity to consult with counsel. "Where the rules explicitly require proceedings in open court, and, without defendant's consent, those proceedings are not conducted there, the defendant and society generally lose confidence in the integrity of the proceeding." *Sessions*, 621 N.W.2d at 756. I would conclude that Martin did not waive his right to be present in the courtroom for jury questions.

*The four communications concerned substantive matters*

I turn next to the question of whether any of the communications related to housekeeping matters. A judge is permitted to communicate ex parte with a jury relative to housekeeping matters but not with respect to substantive matters. *See State v. Greer*, 635 N.W.2d 82, 93 n. 3 (Minn.2001). Substantive matters relate to "any aspect of the case itself" and housekeeping matters relate to " 'physical comforts and the like.' " *Ford*, 690 N.W.2d at 712–13 (quoting *State v. Kelley*, 517 N.W.2d 905, 908 (Minn.1994)). We permit a judge to communicate with a jury regarding housekeeping matters without the defendant present because Rule 26.03 "is designed to protect defendants' Sixth and Fourteenth Amendment rights" and "routine housekeeping matters do not fall within its embrace." *Ford*, 690 N.W.2d at 713. Further, "any doubt regarding whether a communication relates to a housekeeping or substantive matter should

---

3. The majority notes that Rule 26.03, subd. 1(1), mandating the defendant's presence at trial, contains no requirement for explicit on-the-record waivers. However, the rule does describe two situations where the trial may proceed without the defendant present: when

the defendant absents himself without justification and when the defendant is excluded because of disruptive conduct. The rule does not permit a defendant to be absent from trial on the basis of waiver.

be resolved in favor of defendant's presence" and "a record should be made of all communication between the judge and the jury, regardless of its substance." *Id.* Finally, previous decisions of this court have analyzed communications relating to jury instructions and evidentiary matters as violations of the defendant's right to be present. *See, e.g., Mckenzie v. State,* 687 N.W.2d 902, 905–06 (Minn.2004); *Sessions,* 621 N.W.2d at 755–57; *State v. Hudspeth,* 535 N.W.2d 292, 295 (Minn.1995); *State v. Kindem,* 338 N.W.2d 9, 16–17 (Minn.1983).

When we remanded this case for a complete record, we did so because we did not know whether four communications related to housekeeping matters or substantive matters. *State v. Martin,* 695 N.W.2d 578, 587 (Minn.2005). On remand, notes were discovered indicating that one communication was a jury request for a dictionary, and another was a request for the legal rule on "rash impulse." No notes were discovered for the other two disputed communications. An evidentiary hearing was held, but the trial court did not recollect the substance of either of the two communications for which no notes were found; the bailiff recalled that one of the notes pertained to the time the jury would go to a hotel if deliberations were not completed. A fifth communication was discovered on remand: the jury requested a VCR during deliberations and the court granted the request.

A second remand was ordered by this court "for a *Schwartz* hearing to determine the nature of the communications between the jury and the trial judge" regarding the two undocumented communications. At the *Schwartz* hearing the twelve jurors from Martin's trial each testified but they did not recall the nature of the two disputed communications.[4] In sum, I would conclude, based on what we have learned from the two remands, that none of the four disputed communications relate to housekeeping matters; two of the communications clearly concerned substantive matters and the other two remain a mystery.

The request for the dictionary did not pertain to a matter of the jury's comfort, and instead likely related to a definition at play in the deliberations (in light of the jury's request for a legal definition of "rash impulse" shortly after the dictionary request). Given the presumption in *Ford* and the likelihood that the dictionary communication related to a point of law in the jury's deliberation, it cannot be described as a housekeeping matter.

The rash impulse communication, likewise, related to language in the jury instructions. The applicable rules and this court's case law on the matter indicate that such questions are clearly not housekeeping matters. *See, e.g., Sessions,* 621 N.W.2d at 755 (analyzing communication relating to proof beyond a reasonable doubt).

With regard to the two undocumented communications of October 28, the trial judge had no recollection of these communications and presumed that the communications "fell within the agreement" and did not concern matters of "real substance." Unfortunately, the trial judge's definition of matters that were not of "real substance" encompassed questions about the jury instructions. Such communications, we have held, are forbidden. As we said in *Sessions,* a trial court errs "by engaging in substantive communications with a de-

---

4. It is not surprising that the jury members had little to no recollection of the questions given the length of time that had passed since they had served: the jury rendered its verdict on October 29, 2003, and the *Schwartz* hearing was conducted nearly two and one-half years later on March 30, 2006.

liberating jury outside of open court, without the appellant's knowledge, consent or presence, and without the presence of appellant's counsel and the prosecutor." *Id.* at 757.

The trial court's determination that the VCR request, dictionary request, and rash impulse question were not substantive should leave this court with considerable doubt about the nature of the undocumented communications—I cannot conclude on the record we have before us that these communications did not concern matters of substance. The rapidity with which the court answered the two questions for which notes were not found cannot be relied on, as the state suggests, to indicate that the questions related to housekeeping matters since the dictionary question was answered in three minutes and the rash impulse question was answered in two minutes. The presumption in *Ford* again argues in favor of this court assuming the communications related to matters that were not housekeeping, finding error on the part of the trial court. Having concluded that the trial court erred in communicating with the jury on four separate occasions on matters of substance, I would proceed with harmless error analysis.

*Harmless error analysis*

When a trial court wrongfully denies a defendant's right to be present for a jury communication, this court analyzes the error to determine if its impact was harmless beyond a reasonable doubt; that is, that the verdict was surely unattributable to the error. *Sessions,* 621 N.W.2d at 756 (citing *State v. Juarez,* 572 N.W.2d 286, 292 (Minn.1997)). To determine whether such an error was harmless (i.e., not prejudicial), this court assesses the strength of the evidence and the substance of the judge's response. *Id.; see also Kindem,* 338 N.W.2d at 16–17.

Regarding the strength of the case against Martin, the evidence introduced by the state included an eyewitness who identified Martin as the gunman, a neighbor who testified to seeing a car matching the description of Martin's outside the crime scene, directions to the home of Anthony (the victim) discovered in the car of Martin's accomplice, blood matching the victim's DNA discovered in Martin's car, testimony describing a history of Martin and his accomplice coming to the aid of a cousin who had a complex and troubled relationship with Anthony that had flared up the day before the murder and, finally, Anthony's dying declaration that Martin was one of his assailants. *Martin,* 695 N.W.2d at 581–82.

Martin asserts that the state never provided a motive for Martin to murder the victim and, relevant to the premeditation element of the charge against Martin, that the eyewitness did not testify that Martin threatened to shoot Anthony and that the single, fatal shot was fired when a neighbor (responding to the sounds of a struggle) knocked on the door to the apartment where the assault took place. I would characterize the state's case for premeditated murder as strong, but not overwhelming.

Regarding the second analytical step, the judge's answer, the impropriety of allowing a jury to have material not in evidence, is self-evident. As such, this court could conclude that the court's summary disapproval was neutral and nonsubstantive and could not have played a significant role in the verdict. *See State v. Hudspeth,* 535 N.W.2d 292, 295 (Minn.1995) (finding a communication outside of the defendant's presence did not warrant a new trial because the judge's answer was neutral and nonsubstantive).

The jury's request for a dictionary and a request four minutes later for a definition

of rash impulse may have been related. The trial court acknowledged the same. By not notifying the attorneys of these questions Martin was potentially harmed because he was denied the right to assist in formulating responses to the jury's questions. In this case, a reasonable jury could have found that the death of the victim was the result of rash impulse rather than premeditation where the state did not provide a motive, there was no evidence of threats against the victim, and the single, fatal shot was fired when a neighbor knocked on the apartment door.

This case would be a close call if we were only concerned with these two communications. I believe this close call tips in favor of Martin because of the two undocumented communications and the presumption of irregularity that must apply to them. This court does not know the substance of the undocumented communications and the judge's response to them. As such, we cannot answer the question of whether the judge's response was sufficient to call the error in communication a harmless one.

In this case the trial court failed to make a contemporaneous record of all communications with the jury where we have made clear that such a record should be made, the trial court communicated with the jury about matters of substance where the rule is clear that no communication is to be had with the jury during deliberations without first notifying counsel and defendant, and the trial court communicated with the jury about matters that cannot be effectively reviewed on appeal. The majority would place the burden on Martin to "come forward with evidence 'suggesting' that there was 'improper influence' " in these communications, citing to a "rule" announced in the *Erickson* case that a presumption of regularity attaches if a defendant cannot come forward with such evidence.

I believe the majority misapplies *Erickson* to the facts of this case. In *Erickson*, over defense counsel's objection, the jury was allowed to separate overnight during its deliberations. *State v. Erickson*, 597 N.W.2d 897, 902 (Minn.1999). The *Erickson* court held that (1) the trial court erred in separating the jury because it violated Minnesota Rule of Criminal Procedure 26.03, subd. 5(1), and (2) the defendant did not sustain his burden to present evidence of pervasive publicity or other inappropriate outside influences on the jury. *Erickson*, 597 N.W.2d at 902. In other words, it was the duty of the defendant to provide an initial showing that impermissible communications occurred. In this case, the defendant has sufficiently sustained his burden to show that impermissible communications occurred. But it was the duty of the trial court judge to document the substance of the communications and it was the judge's failure to make a record that prevented the defendant from assuming his burden to show prejudice. I strongly disagree with the notion that we will place the burden on a defendant to reconstruct a record for appellate review when he was denied his right to be present in the courtroom.

Under the facts of this case, a presumption of regularity does not attach, and I would not require Martin to bear the burden of supplying a record of communications from which he was unconstitutionally barred. Other appellate courts have similarly not placed the burden on the defendant to prove harmlessness where the record is incomplete. *State v. Corrales*, 121 Ariz. 104, 588 P.2d 846, 847 (1978) (reversing a conviction because an incomplete record precluded the court from finding that jury communications were harmless); *Coley v. State*, 431 So.2d 194, 196 (Fla.Dist. Ct.App.1983) (granting a new trial where content of jury question could not be de-

termined); *see also Tarry v. State,* 289 Ark. 193, 710 S.W.2d 202, 205 (1986) (reversing Tarry's conviction, in light of burden on state to prove no prejudice where the record did not show what was said when judge went to the jury room to answer a substantive question).

In conclusion, Martin did not personally waive his right to be present for communications with the jury, as required by *State v. Ware.* The trial court engaged in off-the-record communications with a deliberating jury about matters of substance. Two of these communications concerned substantive matters, and the failure to notify Martin and his counsel may have prejudiced Martin's rights. The other communications cannot be substantively and effectively reviewed on appeal because no record could be reconstructed. On these facts, the state cannot prove beyond a reasonable doubt that the errors were harmless and, therefore, I would reverse and remand for a new trial.

HANSON, Justice (dissenting).

I join in the dissent of Justice Meyer.